Yeates J.
The lessor of. the plaintiff founds his preten- s sions to the lands in controversy, on a warrant to David Har- < ris, jun. dated 27th July, 1774, for 300 acres of land inj Penn's valley, bounded, southward- by William MqKee, Tho- j mas M'-Kean, aud a hickory ridge ; northward by the foot of i a mountain, including a run that sinks into the mountain foot; eastward by Seth Matlock's survey,; and westward by vacant land in Northumberland, county. A survey has been made' hereon, by William, Maday, deputy surveyor of the district, on the 10th November, 1774, containing 336 acres, 159 perch-1 es, which was not. returned into the surveyor general’s officp' until 30th August, 1783., .
The defendant resists this claim under two warrants; the first in the name of James■ Potter, dated 5th January, 1773, for 150 acres, to include his improvement, adjoining lands surveyed in the name.of Thomas MÍSKean, esq. and to include the hickory sapling ground in Bald eagle township, Northumberland county. Upon this warrant .the plaintiff alleges, that a survey was made by William Mladay, on the 16th June, 1774, containing 164 acres, 9 perches, under the immediate direction of the warrantee, exduding the lands in question, which was afterwards returned'into the surveyor general’s office cyi the 19th May, 1783, with a N. B. thereon by the surveyor, “ that should it be alleged, that the warrant “ was improperly laid, he desired to he heard on that subject.” On the 12th December, 1782, general Potter entered a caveat against granting a patent to David Harris, or any claiming under him, for a tract of land in Penn's township, surveyed under a warrant, dated 27th July, 1774, alleging that he had a prior warrant for part of said survey, After ( * . *558 filing this caveat, but at what time does not appeal-, a deputation was made on the warrant of 1773, in these words ; 44 To 44 James Harris, deputy surveyor,; Execute this warrant and 44 make return of survey thereof into the surveyor general’s 44 office, as soon as possible. For John Lukens, esq. survey-44 or general; Edward Lynch?'
It was admitted, that Lynch was the chief clerk in the office of the surveyor general, and that James Harris was not the deputy surveyor of the district where the lands lay, but, in pursuance of this direction, Mr. Harris made a survey containing 151 acres, 15 perches on the 19th October, 1783, differing materially from the survey previously made by Ma-clay, but not comprehending any part of the lands for which this ejectment was brought.
Previously thereto, but subsequent to Harris's warrant, on the 13th February, 1775, Mr. Potter obtained a second warrant for 300 acres, adjoining lands granted him by warrant of 5th January, 1773, to include his improvement and a hickory ridge, in Potter's township, Northumberland county, which remained unexecuted until the aforesaid 19th October, 1783, when the said James Harris, in pursuance of a like deputation from the said Edward Lynch, and 44 to make a return of 44 survey thereof into the surveyor general’s office, within six 44 months from the date,” executed the same, by a survey, contain 313 acres, 14 perches, which included the lands in dispute.
Upon 3d March, 1784, a hearing was had on the caveat, before the board of property, when general Potter appeared in person, and William Maclay appeared in behalf of David Harris. The board ordered the surveyor general to direct some indifferent person to go on the ground, in the presence of the parties, and survey Potter's warrant agreeably to its location, and the remaining vacancy, and return a general draft to the board, representing exactly the situation of Potter's improvement mentioned in his warrant, and the extent thereof, and of the hickory ridge or hickory sapling ground, and the extent thereof, the run at the foot of the mountain, and other waters near to Seth Matlack's land, and all the adjoining tracts, with such remarks as might be necessary for the elucidation of the whole matter.
According to the testimony of Maclay, no survey by James Harris for Potter was then produced, nor was any thing said of it.
*559 Two bills of exceptions were sealed on the trial; the first on the admission of the surveys in evidence, which were ‘ made by James Harris for James Potter; the second to the charge of the Court.
The ground on which the Court below permitted these two surveys to go to the jury, was, that there was no deputy surveyor at that time, within the district; but this fact was highly questionable and uncertain; because proof was given on the trial, that Joseph J. Wallis executed as general deputy surveyor of the district, on the 15th August, 1783, a warrant in the name of John Keble, on Bald .Eagle, dated 29th July, 1773; and WilliamMaclay swore that Wallis succeeded him as deputy surveyor in Penn’s valley. I readily acknowledge an essential difference between the practice of the land offices, anterior to the American revolution, when the conduct of the officers was under the sole controul of the proprietary commissioners of property, and any practice which may have obtained since known laws have passed upon the subject: and yet I cannot see, that the act of 8th April, 1785, (2 Smith’s Laws, 328.) can have any material influence on the present question. The 15th section of that law provides, “that a de“puty surveyor shall not go out of his proper district to “ make a survey, and every survey made by any deputy sur- “ veyor, without his proper district, shall be void and of no “ effect.” But what is the intention of the legislature herein ? It is convenient in order to promote justice and prevent litigation, that the same person should execute warrants in a given space of country. But what law or usage forbids the surveyor general himself to execute a warrant, if his superior duties allow him leisure for that purpose ? If he may do it personally, why may he not appoint a special agent to perform the service ? Such agent would be a deputy pro hac vice, and would not go out of his proper district. I admit, that a deputy surveyor, without a special authority, cannot go beyond the known lines of his district, to make a survey. It was, however, resolved in Gripe’s lessee v. Baird, at a Circuit Court in Huntingdon county, in May, 1803, that a survey made by a succeeding deputy surveyor, on a warrant directed to his predecessor in the same district,'might be supported by the uniform practice in such cases.
I have bestowed much attention on this subject. On consulting my notes of trials, I find, that in Shield’s lessee v. *560 Buchannan, in Westmoreland county, and in Funston’s lessee v. M'Mahon, in Northumberland county, we determined, that a survey adopted by the land office, although not made by the regular officer, might be read in evidence. These cases are shortly mentioned in 2 Smith’s Laws, 256. On recurring to my notes, I find, that in both instances, the surveys were made previously to the act of ,8th April, 1785. In the first case, James Kinkead, who never acted as the assistant of William Thomson the deputy surveyor, made the survey, which was recognised by the board of property on 5th April, 1792; and in the last, a .survey made in 1782, on a location by Jonathan Lodge, who did not act; under William Scull, the deputy surveyor of the district, was held sufficiently valid to ground a patent in 1790. The naked question, however, came before M‘Kean Ch. J, and myself, in Wright’s lessee v. Wills, at a Nisi Prius Court, held at Washington, in May, 1793, wherein we held, after full argument, that the 15th section of the act of 8th April, 1785, did not apply to the lands in the old purchase. (2 Smith’s Laws, 201.) I have, also, since the argument, made particular inquiry at the land office in Harrisburgh, “ whether, since the acts of assembly of 9th “ April, 1781, and, 8th April, 1785, it had been customary for “ the surveyor general or his chief clerk, to depute specially “ the execution of warrants, to a person who is not the regu“lar deputy surveyor of the district j and in what light such “ special deputations have been, viewed by the board of pro* “ perty ?” The answer, returned to me some weeks after-wards, was, “ that it was not recollected by any of the clerks “ in the surveyor general’s office, ever to have been the prac- “ tice within the period mentioned, to direct warrants fot “ execution to any person who was not a regular commission- “ ed deputy. If any such practice ever did exist, the fact “ could not be ascertained from any records or documents in “ that office. Instances had occurred, however, where war- “ rants have been executed by regularly commissioned depu- “ ties, not within their proper districts : some such, it was “ believed, have been returned and patented, but whether “with a'knowledge of this circumstance at the time, was not “ known.”
. Upon the whole matter, I do not find myself prepared to lay down any general rule, as to special deputations by the surveyor general. That such a practice has obtained in some *561 instances, can admit of no doubt. But to what extent it has been carried, I have not been able to inform myself ; nor can I foresee the consequences which may result from deciding, that what has been done in such cases, is invalid. It may operate most injuriously on titles to many valuable lands; But I have no difficulty in declaring, that, if such deputation made by the surveyor general is valid, the act being merely ministerial, the same thing might be well done by his-chief clerk in the office, who is his immediate representative.
As to the charge, I consider- it as remarkably correct in every particular but one, that the execution of the orders of survey for general Potter, was good, under the circumstances of the case. To this I cannot assent, for one reason not insinuated in the charge: whether it was urged by the counsel on the trial, we are not informed by the record. The special order to James Harris, to make the survey, took place pending the caveat filed by Mr. Patter himself! The board, upon hearing, had made a correct preparatory order; the case was sub judice, and no one member, much less his clerk, could, by his single act, vary the. pretensions of the parties. Potter had complained of the survey made for David Harris, but he complained only of such part of it, as interfered with the call of his prior warrant: as to his later warrant, he was wholly silent. The controversy ought to have been decided according to the relative merits of the parties, in the then existing state of things. Mr. Potter had elected his own tribunal. Nothing was said of the late surveys made for Potter, on the hearing. It was manifestly intended that his early warrant should be first satisfied, according to -its true description, and the vacancy be applied to fill up the other warrants according to their priority and descriptions. More substantial justice could then have been done, than now possibly can be effected. Other considerations naturally arise in my mind, as to the conflicting titles : but I studiously avoid any remark which may prejudice either party on a re-hearing. I am of opinion, that the departure of the'surveyor general from the usual forms of his office, pending a caveat, without the immediate order of the board of property, was unjustifiable either by law or custom, and that the surveys, made in pursuance of these special deputations, cannot be supported; and *562 consequently, that the judgment below be reversed, and a new trial awarded.
BrAckenridge J. concurred.
The Chief Justice took no part in the decision.
Judgment reversed, and a venire facias de novo awarded.