OF

# PENNSYLVANIA.

WESTERN DISTRICT, SEPTEMBER TERM, 1846.

PITTSBURGH.

```
|    4       13|
|f 33 SC ⁴202|
```

STEINER and NEWBOLD (*Landlord*) v. COXE.(*a*)

Proof of the death of a grantor in addition to the proof of the handwriting of subscribing witnesses to a deed, preparatory to its admission to record, does not affect the right to read it in evidence without further proof.

A private sale and conveyance to the original owner of land, purchased by the commissioners for the county at a tax sale, after the expiration of the five years allowed for redemption, if without collusion, is valid, even though the full amount of the arrears may not have been paid as a consideration, it being essentially a redemption, and in accordance with a general custom.

Nothing but a corrupt agreement to defraud the revenue would avoid the conveyance. Per Gibson, C. J.

Evidence of the custom to make such conveyances may be received, not as a custom binding above the statutes, but as an argument for their construction.

And this evidence is for the court, and hence not the subject of a writ of error.

A patent is conclusive against a subsequent intruder; but one entering under colour of title, even though it be absolutely void, cannot be considered in that character.

Professional opinions, read not as evidence of the law, but as arguments, not the less cogent that they show the reasons for the actual opinion of the writer.

IN error from the Common Pleas of Luzerne county.

*July* 8.    This was an ejectment for part of a tract of land, for which a warrant had been granted to William Milligan, tried at a special court, before KIDDER, P. J.    The main question was the validity of a private sale and conveyance by the county commissioners to the trustee of the original owner, after the expiration of five years from a tax sale, at which they had bought in the lands for the county.

The warrant was granted in 1793, and the first question was on the

---

(*a*) This case was argued at the last term at Sunbury, but the publication has been delayed by a circumstance beyond the control of the reporter.

admission in evidence of a deed-poll from the warrantee in 1794, the handwriting of the subscribing witnesses and their death, together with the death of the grantor, having been proved before it was admitted to record. The objection being that the proof of the grantor's death was *ex parte*. The legal title to this tract was vested in Coxe, the plaintiff below, subject to the effect of the commissioners' sales, mentioned hereafter. The defendants showed that this, with many other tracts, were purchased by Tench Coxe and John B. Church, under whom he claimed, with others. That in 1795 there had been a division of the tracts by lot, and the one in question allotted to Church: he then showed a conveyance by Church in 1810 to trustees for creditors, including *inter alia* the Milligan tract; and a conveyance in 1837 by the subsequent trustees of Church to Newbold, for this land with other tracts.

The plaintiff then proved by letters—answer in chancery and parol evidence—arrangements between his ancestor T. Coxe and Church anterior to the conveyance of 1810, by which other tracts had been conveyed to Church in full satisfaction of all his claims to the joint property.

The plaintiff further proved his assent to the occupation of his land by a railway company, under which one of the contractors entered and built a shanty while the road was being constructed on the tract now in question. That the contractor, when his work was completed, sold the shanty to Newbold, making however no claim of title to the land. Under this Newbold entered in 1837, and occupied by his tenant.

Defendant thus united possession under this purchase with his older title from Church. He further showed a sale for taxes in 1820 to the commissioners of the county, and by them to one Harvey in 1844. Plaintiff showed a conveyance from the commissioners of the county in 1829 for a number of tracts, including the one in dispute, in consideration of $1500, which was objected to because the time for redemption was past. The sale was a private one, and the taxes, costs, &c., were not shown to have been paid. Under this title a patent was obtained by plaintiff in 1830, and the subsequent taxes paid. Its validity of course avoided the subsequent sale to Harvey. He proved the practice of the commissioners to make such compromises in numerous instances without objection, and that in some the party making the arrangement would have done better to await the public sale. This evidence was objected to.

His honour instructed the jury that Coxe claimed the original title, and appearing pretty clearly to have it, the sale by the commission-

ers to him was treated by them as a redemption by the original owner. Under this he obtained a patent before the defendants entered. That they *did not claim title in themselves,* and the evidence showed them to be intruders without title; but that they set up the outstanding title of Harvey. That the defendant could not avail himself of this. Under the decision in Ross *v.* Marcey, in 1836, (Law Journal,) where there had been a redemption similar to this, and a patent, and the court held an intruder subsequent to the patent was concluded by it—which decision had been affirmed in the Supreme Court. *" As there are no disputed* facts in this case, we feel bound to say to you that the plaintiff is entitled to recover."

Besides the question as to the deed stated above, the errors assigned were to the admission of the evidence of the arrangement between Church and Coxe; in not charging that the sale by the commissioners was void; and to the charge generally.

*H. B. Wright* and *F. W. Hubbell,* for the plaintiffs in error.—The whole argument of the defendant in error might be conceded, and yet the judgment should be reversed. The burden of his argument is that he had the right to redeem, and that the act of 22d of August, 1829, between himself and the commissioners of Luzerne county, was a redemption by him of the land in question, with various other tracts. That he did it as a redemption and under a claim of ownership. And that such act of redemption was allowable and legal, although the five years, expressed in the act of Assembly, as the time of redemption, were passed when he made the redemption.

A redemption, if made by one without title, inures for the benefit of him who has title. Both the plaintiff and the defendant in error claim under the same title. This is one of the concessions in the cause. It appears upon the record that Church, under whom the plaintiff in error claims, was a tenant in common with the ancestor of the defendant in error. They made a partition by the written articles of May 13th, 1795, and in that partition the tract in question was given to Church, whose assignees conveyed to the plaintiff in error, which is his claim to the property in contest. The defendant in error, on the other hand, undertakes to show that Church, before he made this assignment, made a parol exchange of the tract in question with the ancestors of the defendant in error, for another tract. This was a question of fact for the jury.

The tax title did not stand in the way; for conceding the argument of the defendant in error, he had redeemed the land from the tax sale; and as such redemption inures to the benefit of the real

owner—Duer *v.* Boyd, 1 Serg. & Rawle, 203; Orr *v.* Cunningham, 4 Watts & Serg. 299—the jury had but to determine this question of fact in order to settle the rights of the parties. The judge erred in taking the question of fact from the jury, and for this there must be a reversal.

The judge in the court below called the plaintiff in error a mere *intruder.* The definition of an intruder is to be found in the case of McCall *v.* Neely, 3 Watts, 69. In which case the ch ef justice defines an intruder to be a mere *squatter,* who pretends to no title.

That the plaintiff in error is not an intruder in this sense, is confessed by the concession in this cause, that he claimed under the same title as the defendant in error; and by the fact that his opponent deemed it necessary to go into evidence to rebut his title.

But had the defendant the right of redemption after the lapse of five years from the sale by the county treasurer to the commissioners? For if this act of redemption is void, then there is an outstanding title in the subsequent grantee of the commissioners, which was a bar to the recovery of the plaintiff below.

A denial of such right is to be found in the plain words of the act of Assembly of the 13th of March, 1815.

By the 1st section of that act, it is provided that in case of default of paying the taxes on unseated lands, that the county treasurer "shall make sale of such unseated land." If there be no bid to the extent of the taxes due on the land and the costs, it is made the duty of the county commissioners to purchase the same, and the treasurer shall make them a deed " to and for the use of the proper county."

Here is no defeasance expressed. It is a *sale* without stint. But a limited defeasance is subsequently expressed. "The right of redemption shall remain in the real owner for five years after such sale."

The whole arrangement is the creature of a positive written law, and we have scarcely the right to go out of it for its interpretation. The defeasance is *expressly* confined to five years.

All its auxiliary provisions look the same way. An account is directed to be kept with the land for five years on the commissioner's books, (it having by the commissioners' purchase been withdrawn from taxation,) in which the land is charged with an estimated amount of taxes yearly, for the purpose of charging the owner when he comes to redeem. This is continued but for five years.

When the commissioner makes a sale of land, which shall have so remained five years unredeemed, any surplus beyond the taxes

belongs not to the original owner, but to the county. Upon the sale by the treasurer to any private man, the surplus is carefully secured for the owner, as he has the right of redemption, and the property is still his.

We might proceed to cite many other parts of this law which speak unequivocally, that at the expiration of five years the title of the county becomes indefeasible.

This is the sentiment of every judge or layman who has read this act. Kirkpatrick *v.* Mathiot, 4 Watts & Serg. 254.

"There is nothing in these acts which in any degree gives colour to the idea that after the five years have expired, the former owner had a particle of interest in them, or the proceeds of them." Huston *v.* Foster, 1 Watts, 479. After the expiration of the five years, "the day of redemption had gone by, and the title of the county had become indefeasible."

But it is attempted to support this redemption on the principles of courts of equity. Courts of equity relieve against penalties, forfeitures, lapse of time, &c. It is said, as a Court of Chancery would relieve against the lapse of the time of redemption, the county commissioners did, in doing this act, but what a court of equity would have compelled them to do.

This is a mistake. Penal laws are not to be construed according to rules of courts of equity. Harrison *v.* Southcote, 1 Atkyns, 528, 537. Chancery never relieves against a penalty or forfeiture declared by statute. Blennerhasset *v.* Day, 2 Ball & Beatty, 104; Keating *v.* Sparrow, 1 Ball & Beatty, 374; Sparks *v.* The Company of the Liverpool Water-works, 13 Ves. 428.

As a redemption, the transaction of August 22d, 1829, between the county commissioners of Luzerne, and the defendant in error, was wholly void on another account; and that is for the manifest reason that he did not pay the whole amount of taxes. Of this, the plaintiff in error gave proof in the court below. It was a question for the jury which the judge took from the jury; which gives the plaintiff in error the right, in this court, to consider it as proved.

The county commissioners cannot forgive the taxes. That would be a dangerous power. Uniformity of burden is a great political and social principle. The Constitution of the United States makes it the subject of a direct guaranty. If the county commissioners forgave these taxes to the defendant in error, they did injustice to every other tax-payer in the county. But it is attempted to support this transaction as a *sale* by the county commissioners.

They are authorized after the lapse of five years to sell, in these

words, " it shall thereafter be lawful for the commissioners to sell any such land, *by public sale.*" It shall be *lawful,* that is, they may either keep the land, or sell it at *public sale.* No other mode is allowed by this plain-speaking act.

The sale to the defendant in error was a *private* sale, and therefore unauthorized by law.

This, however, is endeavoured to be escaped from, by declaring the words " public sale" *directory.*

County commissioners having the power to acquire lands say they have the right, by consequence, to sell them. This provision of the law merely intended to enlarge their power by enabling them to sell at public sale.

What is the meaning of the word *directory*, and of the phrase that a statute is directory? Dwarris on Statutes, p. 713, defines it to be " not compulsory."

The English cases, in which statutes have been held to be *directory*, may be grouped under two heads: 1st. Those which contain designations of time. . 2d. Those which declare restraints upon marriage. Under the first of these heads may be arranged the Pennsylvania case of Gearhart *v.* Dixon, 1 Barr, 224, and under the second, Rodebaugh *v.* Sanks, 2 Watts, 9. Time has ever been dealt with by the courts, and restraints upon marriage are abhorred by the law.

But is the provision, which is here sought to be pronounced *directory*, of little importance? Is it not the universal policy of the law in regard to all sales made by public officers, *e. g.* the sheriff, the coroner, masters in Chancery, executors and administrators selling under orders of court, trustees of insolvent debtors, &c.?

In the case of Robins *v.* Bellas, 4 Watts, 257, it was decided that the sale by the trustee of an insolvent, not at auction, was void. " In directing the sale to be public, (say the court,) the legislature doubtless intended to provide against collusion and fraud."

The minutest directions of the tax laws have never been thought *directory*, as witness the train of decisions avoiding sales anterior to the act of 1815.

No instance, says Huston, J., before the act of 1815, can be found in which a purchaser at a tax sale sustained his title in a court of justice. Morton *v.* Harris, 9 Watts, 322.

The cases before the act are all to this effect. Watt *v.* Gilmore, 2 Yeates, 331 ; Simon *v.* Brown, 3 Yeates, 186 ; Wistar *v.* Kammerer, 3 Yeates, 104.

The like particularly has been required since the act of 1815 as

to requisites, the proof of which is not dispensed with by that act. Morton *v.* Harris, 9 Watts, 322; Connelly *v.* Nedrow, 6 Watts, 452; Bartholemew *v.* Leech, 7 Watts, 472; Riddle *v.* The County of Bedford, 7 Serg. & Rawle, 394.

No case has been cited in which it has been decided that any material provision of the tax laws was directory. A dictum to that effect was thrown out by the Chief Justice in Huston *v.* Foster, 1 Watts, 478; and an attempt is made by the production of some unauthenticated manuscript to give this case a more direct bearing. The safer course is to rely on the Reporter.

But if the defendant in error were to be allowed all that he seeks to establish by his manuscript cases, &c., it would be no more than that the purchaser was not required to prove the preliminary steps to a sale: the application of the principle that "omnia præsumuntur rite esse acta" should protect him. Or as Mr. Justice Rogers expresses himself in Deviney *v.* Reynolds, 1 Watts & Serg. 328, "It is unjust to compel the purchaser to examine a fact peculiarly within the knowledge of the county commissioners." But they would leave untouched and unjustified such violations of the law as this, in which both participate. If the county commissioners are wrong in selling at private sale, the purchaser is equally wrong in buying at such sale. He certainly buys with full notice of manner in which the sale is made.

In the exercise of private powers there must be the minutest observance of every formality directed by the donor of the power. 2 Harrison's Digest, 5402, edition of 1844, contains a full collection of the cases on this subject.

An attempt is made to sway the court by the alarm of disturbing titles. No proof has been produced to show that the refusal of the court to sustain these transactions will oust one man from his farm or his dwelling-house. Some disturbance may be produced among the holders of wild land, who have not thought them worth the paying of taxes until they are roused by some improvements in the vicinity.

An attempt was made in the court below to justify this redemption, on the ground of *custom*. The following cases are thought to lay that subject at rest: Rapp *v.* Palmer, 3 Watts, 179; Newbold *v.* Wright, 4 Rawle, 212; Frith *v.* Barker, 2 Johnson, 335; Brown *v.* Jackson, 2 Wash. C. C. Rep. 24; Stoever *v.* Whitman, 6 Binn. 417; Bolton *v.* Colder, 1 Watts, 360.

*Mallery* and *Greenough*, for defendant in error.—First three excep-

tions are to the deeds. They were all proved according to the express provisions of the act of Assembly, and the exception is founded upon the fact that more was proved than was necessary, not that there was any deficiency in the proof. The probate of all deeds for record is always *ex parte*. In the nature of the case it cannot be otherwise.

The sixth exception, which is the next upon which the plaintiff in error insists, was the admitting in evidence of the deed from the commissioners of Luzerne county to Charles S. Coxe, for (*inter alia*) the tract of land in the warrant in the name of William Milligan, dated August 22, 1829.

The deed was duly proved, and there was nothing upon the face of the deed to show in what manner the sale was made by the commissioners. The deed was clearly evidence. Robins *v*. Bellas, 4 Watts, 255. As to the effect of it, when connected with other facts, that is another matter, and will present an important question in this cause :

Whether after a regular purchase by the commissioners, of unseated lands duly sold for taxes, the former owner of the land has an equity after the expiration of the five years from the sale, but before any sale by the commissioners to a third person, to demand a reconveyance upon tendering taxes, costs, and interest due for or incurred by the sale of said land. Or, if he has not an equity which he can enforce, if the commissioners convey to the former owner at private sale, and receive the consideration, whether the title of the county is not thus transferred.

If the provisions of the acts of Assembly were all incorporated into a contract between individuals, there could be no doubt that there would remain the right to redeem, after the expiration of the five years.

The rights of the parties remaining as they were, and no third persons affected by it, a court of equity would relieve against a penalty or forfeiture, as compensation for the delay could be made in money. Davis *v*. West, 12 Ves. 475 ; Sanders *v*. Pope, 12 Ves. 282 ; Northcote *v*. Duke, 2 Eden, 319 ; Rose *v*. Rose, Ambler, 331 ; Hayard *v*. Angel, 1 Vern. 222.

We are to see whether the case is different where one party is a private person, and the other a county deriving its authority from acts of Assembly.

If there was a forfeiture imposed by statute, for the non-payment within the limited time, it would not be contended that such penalty could be removed either by a court of law or equity. Keating *v*. Sparrow, 1 Ball & Beatty, 374.

. But from a full examination of all the acts of Assembly upon this subject, it will appear, that there is no forfeiture of the land, by the neglect of the former owner to redeem during the five years, nor until the commissioners exercise their power to sell, and do sell and convey to another person.

There is no language in any of the acts that speaks of a penalty or a penal effect upon the owner for omitting to redeem.

The object of these acts of Assembly is to raise revenue to the county from the tax upon unseated lands, and not to make the county speculators in lands.

It is to be observed that there is no enactment in any of the acts, that makes the commissioners or the county the absolute owners of the land sold to them by the treasurer.

By the seventh section of the act of 1815, " if the owner shall not redeem within the period aforesaid, it shall *thereafter be lawful* for the commissioners to sell any such lands at public sale, and make a deed therefor to the purchaser, which shall be available in law, as well against the county as against the person or persons as whose estate the land had been sold," &c.

This section fixes the sale to a third person, as the act which shall unite the title of the county and the former owner in such purchaser; and of course would cut off all equity of redemption.

The language of this section implies that the county had not an indefeasible title, that the sale to another is to perfect the title.

The deed to the commissioners contains the grant, subject to the redemption allowed by law. It does not specify a redemption within five years, and, if, by a fair construction of the acts, the sale by the commissioners is the limit, in point of law, for redemption, then the plaintiff below was in time. The right of the former owner is called the right of *redemption*, a word applicable to mortgages and pledges.

There are some dicta to the effect that the title of the former owner was extinct by the limitation of five years, in Kirkpatrick *v.* Mathiot, 4 Watts & Serg. 283; but that was a case where there had been a sale by the commissioners after the five years had elapsed, and this question was not before the court.

But if the former owner had not such an equity as he could enforce after the five years, yet, if the commissioners of the county, exercising their discretion, convey the land to the former owner and receive his money, and make him a deed, whether it be called a private sale or a redemption, such conveyance, after the five years, will divest the county of their interest in the land.

Authority to sell the land is expressly given to the commissioners after the expiration of the five years, by the act of 1815, and by the act of 29th March, 1824.

The question is, whether they are confined to a public sale made in pursuance of the advertisements required by the acts, and cannot sell or suffer a redemption by private contract, even though greatly to the advantage of the county.

It is contended on the part of the defendant in error, that the authority given to the commissioners to sell at public sale is directory, and not mandatory.

"Negative words," it is said, "will make a statute imperative; and affirmative words may, if they are absolute, explicit, and peremptory, and show that no discretion is intended to be given." Dwarris, 715. But the acts in relation to this matter are not peremptory. The language in sec. 7 of the act of 1815 is, "it shall be lawful." In the acts of 1824, the commissioners are "authorized to sell at public sale."

Observe the difference in phraseology in the above sections, and in the fifth section of the act of 1815, where it "shall be the duty" of the commissioners to purchase, &c. The language of the sixth section of the act of 26th of March, 1814, makes it imperative on insolvent trustees to sell at public sale. They shall sell, &c. Upon this statute the decision in Robins v. Bellas, 4 Watts, 255, was made.

In Woods v. Ingersoll, 1 Binn. 146, the act of April 8, 1785, enacting that every survey thereafter returned into the land-office on any warrant issued after the passage of the act, should be made by actually going on and measuring the land, and marking the lines to be returned upon such warrant after it should come to the hands of the deputy-surveyor, was held to be directory and not compulsory, as to running and marking all the lines.

In Gearhart v. Dixon, 1 Barr, 224, it was held, that the act requiring school directors of every district, "to cause to be levied, on or before the first Monday in May, a tax," &c., was directory as to time.

The interests of the county require that these statutes should be regarded as directory, and that the commissioners may sell at public or private sale, as may be most beneficial to the county. The commissioners have sold at private sale the real estate of the county, which has been sustained by the Supreme Court.

Vankirk v. Clark, 16 Serg. & Rawle, 291, decides that the commissioners may sell what they have bought to secure a debt or duty to the county, without express authority of statute; and that case

was decided with a full knowledge that the power to sell at public sale had been given. In Huston *v.* Foster, 1 Watts, 478, Mr. Chief Justice Gibson says, "The act indeed (of 1815) points out a mode by which an indefeasible title may undoubtedly be vested in the purchaser; but I am not prepared to say that its provisions in this particular are not barely directory." It appears clearly from the record in that case, tried before Mr. J. Burnside, that that was the question raised and decided by him, and affirmed by the Supreme Court. The record also of the case of Spring *v.* Caul, not reported, shows the same question was decided in the same way as in Huston *v.* Foster. In neither of those cases could the sales have been sustained without holding that these statutes were directory, for their provisions had not been complied with, so as to make a public sale under the acts.

Eighth exception. Evidence of the practice of the commissioners to sell and convey after the five years at private sale, was properly admitted.

If the language of those acts should be considered as doubtful or obscure, the contemporaneous opinion of the profession, and a practical construction of the acts for a number of years, would be entitled to respect, especially as many titles have passed in pursuance of that construction. Dwarris, 693. Upon this subject, the opinions of several members of the profession, given at different periods and to different persons, were referred to—as was the case of Powell *v.* Barrington, decided in Schuylkill county in 1839, by Judge Porter, and acquiesced in as the law. The evidence in this cause shows a practice by the commissioners to sell at private as well as public sale, and convey to the former owner and sometimes to strangers.

It has become a rule of property, and to give a different construction to those acts at this time would shake titles to an incalculable extent.

Whether Coxe, the plaintiff, paid all the taxes that were due and assessed upon his lands, at the date of the deed on the 22d of August, 1829, does not appear. He paid all that the commissioners required of him. The assessments made by the clerk of the commissioners at this time, and with a view to this trial, should have no weight.

The commissioners are vested with large powers, and their acts are binding upon the county; and their omissions will not prejudice a third party. Deviney *v.* Reynolds, 1 Watts & Serg. 328.

In Hunter *v.* Albright, 5 Watts & Serg. 426, Mr. Justice Kennedy says: "That no one can doubt that the county, which is a corporate

person, and acts by its commissioners who are its representatives, is bound by the same rules and principles that govern individuals in their dealings with each other."

Baird *v.* Cahoon, 5 Watts & Serg. 540, the county treasurer has duties also to perform, although a public officer.

Besides the conveyance by the commissioners in 1829, of these lands to Coxe, they caused them to be assessed as his property, from that time to the present, and have regularly received from him the taxes upon them to the present time, thereby treating them as his property, and taking from him the burdens imposed upon them; upon what principle can the commissioners now claim the lands, or pretend to sell them to others, and retain the purchase money and taxes received from Mr. Coxe?

The exception taken to the charge of the court at this time, that the question as to the title of Newbold was not submitted to the jury, ought not to prevail.

What the judge says in his charge is according to the facts as the cause stood in the court below: "that the defendants do not claim title in themselves, &c., but they set up an outstanding title in a third party, either in the county of Luzerne, or Jamison Harvey, who purchased the tract at commissioners' sale, in August, 1844, and obtained his deed the 15th of the present month."

Again, the court say, "as there are no disputed facts in the case," &c.

There were no disputed facts in the case, as it then stood before the court, nor did the counsel request any fact to be submitted to the jury; and to reverse for any such error now assigned, would be unjust to the defendant in error, and not treating the court below fairly.

And no one can examine the evidence without seeing that there could be no ground of dispute as to the fact in whom was the original title to the tract of land in question. The only question below, after the evidence was closed, was, as to the effect of the conveyance of the commissioners to Coxe. If that deed was invalid, the title was alleged to remain in the county, or her grantee Jamison Harvey.

GIBSON, C. J.—The exceptions to the deeds poll, that the proof of their execution was *ex parte,* have been properly abandoned. Affidavits of subscribing witnesses, preparatory to recording, have always been received as *primâ facie,* whether the instrument were actually recorded or not.

The exception to the plaintiff's conveyance from the commissioners of Luzerne county is unfounded. The question involved

by it, is whether the statutes of 1815 and 1824 are susceptible of an interpretation to support titles to lands which have been redeemed after the five years, in pursuance of a practice which has prevailed to an almost unlimited extent; and if they are, it will be our duty to adopt it in order to prevent the general confusion, loss of property, and ruinous litigation, that would be produced by over-turning some thousands of titles. To do so will not require us to strain the words of the legislature, or shake our own decisions. It will be necessary, however, to distinguish between redemption by permission and a right to redeem; for the one may be good independent of the other. County commissioners are directed to bid off lands which fail to fetch a price that will discharge the taxes and costs, not to re-sell them at a profit, but to prevent a loss. That is the primary, and ought to be the only intent. The principal object was payment of the tax: a subordinate one was to let the owner have his land again in a reasonable time and consistently with the first; and I would readily hold that the right of redemption survives the five years in the form of an equity, had the legislature treated the deed to the commissioners distinctly as a security. But the right to redeem is a thing of arbitrary creation; and as it exists only by force of the statutes, it cannot last in any form, beyond the prescribed period of its being. It is treated in them, not as an equity which survives, but as a right which expires with the years of grace. The county acquires a title which is at first defeasible, but at last absolute; and with a strong inclination to do so, I am unable to view it as I do the title of a mortgagee or trustee to sell, which gives him, after a sale on his mortgage or a conveyance, just so much of the proceeds as is necessary to discharge the encumbrance, and leaves the surplus to the debtor. That the legislature did not so view it, is proved by the absence of a direction to call for no more than the taxes and costs, and to leave the residue of the price in the hands of the purchaser, secured by a surplus bond, as in the case of a sale by the treasurer. A provision to that effect would have been a just and a salutary one; but it is not in the statute of 1815; and it is not our province to insert it. But it is reasonable to suppose, the legislature would have inserted it, had the design been to treat the conveyance of the treasurer as a mortgage, and a sale on it as a sale on a mortgage. The legal effect of the omission of it is, that the commissioners hold the land for the county, after five years, as its absolute property. Its title is that of a creditor who has purchased on his own execution, or it may be fitly compared to the legal title of a vendor who has regained the possession by a verdict in eject-

VOL. IV.—4        C

ment for purchase money, on terms of payment which.by our prac- tice must be made at the day, to prevent the title of the vendor from becoming absolute. There is nothing in the terms of the enactment to put the consequence of the owner's laches on the foot of a penalty or forfeiture; for the commissioners may sell without judgment or decree of foreclosure; and equity cannot relieve against the provi- sions of a statute, or enlarge a gratuity beyond the bounds set to it by the legislature. For this reason it is, that the former owner is not allowed to redeem, after two years, against a purchaser at trea- surer's sale, on tender of the taxes, costs, and rate per cent. The statute gives him, as well as the owner of land sold at commis- sioners' sale, all the indulgence which the legislature supposed to be compatible with the public interest; and it is not in the power of equity to enlarge it.

But though the owner may not redeem by right, may he not do so by permission? There certainly is nothing in either of the acts, or in the object to be effected by them, which forbids it. The one declares it to be *lawful* for the commissioners, and the other *autho- rizes* them to sell; but there is no mandate to do so. The sale was provided as a means of collection; but the commissioners were not commanded to use it at the first instant without regard to its neces- sity. The end being attained without it, the county is indifferent to the destination of the land; and the commissioners are conse- quently not bound by any motive of policy to sacrifice the property of the debtor. It consists not with the justice or the dignity of a free government to confiscate the estates of its citizens; or make them bear more than their respective proportions of the public burdens; or to speculate on their short-comings as sources of in- creased revenue. To prevent these statutes from doing more than was intended, there must be a constructive power, somewhere, to mitigate their severity when they would operate oppressively. Though the legislature might not see proper to enlarge the time of redemp- tion as a matter of right, they might choose to have it done in par- ticular cases, and under special circumstances, of which it would be. the province of the fiscal officers to judge. Executive officers have such implied powers as are necessary to carry their express powers into effect; and they necessarily have implied power to execute a statute according to its purpose. In Harris *v.* Monks, 2 Serg. & Rawle, 559, the court, acknowledging a difference between the practice of the land-office when it was regulated by the private will of the proprietary, and its practice when regulated by public laws, held, that a survey adopted by the land-offices might be read in

evidence, though it had not been made by the proper deputy; and the same principle was held in Creek *v.* Moon, 7 Serg. & Rawle, 331, on the authority of the preceding case, and many others which were mentioned. From these, we are at liberty to conclude, that every thing like discretion is not withheld from public agents whose action is prescribed by statute. The statutes before us have restricted the right of redemption to five years; but they have not excluded a liberal interpretation by those whose business it is to execute them according to their spirit instead of their letter, by restraining them to their legitimate objects. As to the right to sell at the pleasure of the commissioners, it must be admitted that they are empowered; but as to the necessity of selling, they are undoubtedly directory. It would impute an absurdity to suppose the legislature meant to require a sale in order to raise a tax actually tendered at the treasury. To prevent a measure so wantonly oppressive, the commissioners must, in proper cases, be allowed to exercise a dispensing power. I do not say that a private sale to a stranger would be within the bounds of their discretion, as it might be prostituted to purposes of private gain or personal favour; but a private sale to the former owner, being essentially a redemption, is good to divest the title of the county, though not to alter the title of the owner.

It is urged, in this instance, that the land was redeemed for less than was due; whence an argument that the conveyance is void; and had not the act of 1824 authorized the commissioner to sell for less, it would have been a formidable one; for their discretion would scarce have extended to a remission of part of the public dues. But experience had shown that unpaid taxes were frequently suffered to accumulate till the land could not be sold at all; and to sell for what it would fetch, was found to be the best thing that could be done. With power to turn the land to the best account, why should the commissioners be bound to sell it at public sale, even for less than could be had for it by redemption? If they can sell for less, they surely can compromise for less; especially as land is never publicly sold for its value, to say nothing of the costs and charges which must come out of the proceeds. They necessarily have power to compromise for the protection of the interests they represent; and the debtor, acting in good faith, is not responsible for their exercise of it. Having paid what was demanded, he is not to be prejudiced by their error in demanding too little; and any compromise made in good faith, though founded on an erroneous estimate of the value, revests the title. Nothing but a corrupt agreement to defraud the revenue would avoid the conveyance;

and without assuming the fact of collusion, the court would not reject it. Being received, it inured to the party who owned the title, and brought back the contest to the question of right on original grounds.

. The reading of opinions on the preceding part of the case was pertinaciously opposed; and as it was asserted that we had excluded opinions of counsel on another occasion, it is proper to state, for the sake of the future, the reasons for which we hold them to be admissible. Judicial opinion is entitled to respect beyond what it might claim for the intrinsic evidence of its accuracy; but professional opinion, emanating from the highest or the humblest member of the bar, is to be excluded as evidence of the law. The judiciary would be degraded, if it were to try common law principles by certificates of counsel, as canon law principles are tried by certificates of bishops. But the reasons on which an opinion of counsel is rested may be entitled to a very different consideration. It sometimes contains arguments which, even where they fail to convince, afford valuable assistance to the judge in attaining his conclusion. Indeed a well reasoned opinion is neither more nor less than an argument, and not the worse for having been digested and reduced to writing before it is delivered at the bar. Nor is it the less an argument that it is the actual opinion of the author of it. There are counsel who would not consciously risk their reputation by an unsound argument even in oral discussion. And there are others less scrupulous, who perhaps justly think it their duty to put their client's case in its most favourable light, and leave the responsibility of the decision to those who are to make it. But though it would be criminal in a judge to surrender his own opinion to the influence of a name, it is plainly his duty to receive, with respect, the reasons delivered at the bar, from whatever source they may have been drawn.

The evidence to show the universality of redemption by permission was properly received; not, as was alleged, to prove a custom superior to the statutes, but to found an interpretation of them on the basis of the argument *ab inconvenienti*. It was evidence to the court, not to the jury; and its reception, being matter of legal discretion, is not a subject of error. The remaining exceptions to evidence are plainly unfounded, or not pursued.

But the exception to the charge is better founded. The plaintiff had shown a patent: and the court, holding it to be conclusive against the defendant as an intruder, withdrew every other part of the case from the jury. The abstract principle is undoubtedly a

sound one; for a plaintiff's patent is itself evidence of title which it is necessary for the defendant to rebut. It is a conveyance from the primitive owner of the soil; and its recitals are evidence against one who claims under him by a subsequent conveyance, or does not pretend to claim under him at all. The principle was stated in Taylor *v.* Dougherty, 1 Watts & Serg. 326, and many cases before it. But that the defendant was an intruder because he entered under one who had purchased shanties put upon the land with the plaintiff's consent, or because he had taken a void deed from the commissioners of the county after the commencement of the suit, is a position that cannot be maintained. It was a part of the case by the admissions of the parties, that Mr. Newbold, who is the actual defendant, claimed title under the plaintiff himself as a trustee for his use; in support of which, he had shown that the tract in question was allotted by Ruston, Church, Coxe, and Company, to Mr. Church, as part of his share of the lands acquired by the concern; and that the share of Mr. Church has been transmitted to him by Mr. Church's assignees. Whether the company allotted the tract to Mr. Coxe by a new arrangement, or whether Mr. Anthony, the agent of Mr. Church to patent his tracts in the agent's name, had authority to convey the land in contest to Mr. Coxe, are questions of fact which have been unprofitably discussed before us, at the expense of much time, and which are remitted to the proper forum. We have to do with nothing but the isolated points raised by the assignment of error; and for all besides, we refer the parties to the court below and a jury.

Judgment reversed, and a *venire de novo* awarded.