## Commonwealth, Appellant, *v.* General Refractories Company.

Argued November 12, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward T. Baker,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*William H. Wood,* with him *N. David Rahal, John F. Headly,* and *Hull, Leiby and Metzger,* and *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 16, 1965:

This is an appeal by the Commonwealth of Pennsylvania (Commonwealth) from a final judgment of the Court of Common Pleas of Dauphin County sustaining certain contentions of General Refractories Company (General), a Pennsylvania corporation, with regard to the determination of its Pennsylvania corporate net income tax for the calendar year 1954.

General, in 1950, purchased all of the stock of American-Austrian Magnesite Corporation, a Delaware corporation, from the then owners. The principal asset of the acquired company was the entire outstanding stock of Oesterreichisch-Amerikanische Magnesit, A. G. (Oemag), an Austrian corporation engaged in mining

and manufacturing activities in Europe.[1] Since the Austrian Government, at that time, had imposed currency controls restricting the removal of currency from Austria, General completed the aforementioned purchase only after entering into several agreements with Oemag whereby it could obtain a return on its investment in a manner approved by the Austrian Government. The return took the form of 15,000 tons of magnesite to be delivered annually by Oemag to General; and although the initial agreement between the parties indicated that such tonnage was to be paid as "royalty and compensation" for General's grant to Oemag of the use of certain patents and know-how, the "Supplemental Agreement" required and approved by the Austrian Government indicates rather clearly that the purpose of the magnesite payments was to provide a satisfactory return on its investment to General. The "Supplemental Agreement" stated that the magnesite was to be accepted "in lieu of dividends" and that Oemag shall pay no "additional dividends" in any year in which it pays magnesite to General. It also states that General may terminate the arrangement if it ceased to be the sole stockholder of Oemag or if the Austrian Government thereafter permitted Oemag to pay dividends in currency. Both of these latter conditions confirm the connection between the magnesite payments and General's stock ownership in contrast to any sale or licensing of patents and know-how.

In 1954 General received from Oemag (1) the 15,000 metric tons of magnesite with a value (after loss in shipment and certain expenses of General) of $927,562.13 and (2) 1,886 shares of stock in an American corporation with a value (over the cash paid to Oemag by General) of $115,789.83. The total of $1,043,351.96

---

[1] After the purchase was completed, General liquidated the American-Austrian Magnesite Company and became the direct owner of Oemag's stock.

was reported by General in its federal income tax return as dividends and was used by it in computing a credit against its federal income tax as dividends received from a foreign corporation. In computing its Pennsylvania corporate net income tax, General deducted the entire amount as dividends received from another corporation. The Commonwealth denied General's right to make this deduction, thus giving rise to the present controversy.

At all times, from the initial enactment of the Pennsylvania Corporate Net Income Tax Act of May 16, 1935, P. L. 208 (Act), to the present day, the measure of the tax has been, with few adjustments, the income upon which tax is paid to the Federal Government. See *Commonwealth v. Lukens Steel Company,* 402 Pa. 304, 167 A. 2d 142 (1961). Pennsylvania has always referred to this measure as "net income", and it has always defined net income as the "net income" (prior to the Internal Revenue Code of 1954—hereafter referred to as Code) or "taxable income" (after passage of the Code) returned to and ascertained by the Federal Government.

As they stood on May 16, 1935, the federal internal revenue laws allowed all dividends received by a corporation from a taxable domestic (U.S.) corporation to be deducted from gross income in determining net income. Revenue Act of 1934, ch. 277, §23(p), 48 Stat. 690. At the same time they allowed a credit against tax for taxes paid to any· foreign country, Revenue Act of 1934, ch. 277, §131(a)(1), ·48 Stat. 718, and extended the benefits of this credit provision to any domestic corporation which owned a majority of the stock of a foreign corporation from which it received dividends when the foreign subsidiary itself paid tax to a foreign country on the accumulated profits from which the dividends were paid. Revenue Act of 1934, ch. 277, §131(f), 48 Stat. 720. The Pennsyl-

vania Corporate Net Income Tax Act, when enacted in 1935, said nothing about dividends received from another corporation, the result being that dividends received from other United States corporations were eliminated entirely from Pennsylvania net income (all having been deducted from federal gross income in computing federal net income) while dividends received from foreign corporations were included entirely in Pennsylvania net income (no deduction from federal gross income being provided prior to ascertainment of federal net income).[2]

In the Revenue Act of 1936, ch. 690, 49 Stat. 1648-1756, the Federal Government made certain changes in the structure of the provisions imposing income tax on corporations. One of these changes eliminated entirely the deduction for dividends received from a United States corporation and substituted for it a credit against net income (*not* against the tax itself as stated both by the lower court and by General on its brief before us). Another change reduced the extent of the benefit to 85% of the dividends received, Revenue Act of 1936, ch. 690, §26(b), 49 Stat. 1664. These changes were made as part of a federal policy of discouraging the use of multiple corporate entities and of encouraging simplification of corporate structures. Bittker, *Federal Income Taxation of Corporations and Shareholders* 47. No pertinent change was made, however, in the foreign tax credit provisions as previously contained in the Revenue Act of 1934, and these provisions were retained in the Revenue Act of 1936.

Whatever the reasons for the federal changes, they had the effect of dislocating the Pennsylvania corpo-

---

[2] Actually, in The Revenue Act of 1935, ch. 829, 49 Stat. 1014-1028 (enacted Aug. 30, 1935) §23(p) of The Revenue Act of 1934 was amended to limit the deduction to 90% of the dividends received. By this time the 1935 Session of the Pennsylvania General Assembly had been adjourned.

rate net income tax measure because the "net income" now returned to the Federal Government included *all* instead of *none* of the dividends received from a United States corporation. Therefore, the Corporate Net Income Tax Act was amended, Act of August 7, 1936, P. L. 127, to provide for an additional deduction from net income "on account of any dividends received from any other corporation". Obviously, this amendment not only permitted the elimination from Pennsylvania net income of 100% of dividends received from U. S. corporations, as before; it also contained no restriction on the source of the dividends to such United States corporations. As amended, the deduction applied to dividends received from foreign corporations, as well, and was thus more extensive than it had been prior to the federal changes.

The Pennsylvania deduction for dividends received has remained in substantially the same form to the present day. See Corporate Net Income Tax Act, §2(1)(b), 72 P.S. §3420b. While the federal tax provisions, as now contained in §§243 to 245 of the Code, once again provide for a deduction from federal gross income in arriving at federal taxable income rather than a credit against the latter, the only effect of this 1954 Code change was to require Pennsylvania to limit its deduction for dividends received to the extent such dividends are still included in federally ascertained taxable income. Thus, today (and in 1954), 85% of dividends received are eliminated from Pennsylvania net income because they are deducted from federal gross income in determining federal taxable income; while the remaining 15% of dividends received are subsequently deducted in computing Pennsylvania net income.[3] In this way Pennsylvania has retained a 100%

---

[3] To the extent that dividends are received from a foreign corporation not engaged in business in the United States, of course, the present language permits, as it did in 1936 and thereafter, a deduc-

dividends received deduction policy in the determination of corporate net income.

The effect of this history on the status of the magnesite received initially by General from Oemag is not entirely clear. As pointed out above, dividends received from a foreign corporation not engaged in business in the United States are not deductible to any extent for federal tax purposes. Rather, they provide the basis for a credit against tax. Code §§901, 902. On the other hand, the language of the Corporate Net Income Tax Act, supra, does permit a 100% deduction for such dividends; and the parties here have stipulated that *cash* dividends so received have been recognized, at least during 1954 and subsequently, as deductible dividends received from "any other corporation". We believe that the Act, as amended in 1936, provided for similar treatment between then and 1954 and, also, that it applied to property (other than cash) received and includible in gross income as a dividend.

These conclusions do not conclusively establish General's right to a deduction, however, since it was uncertain whether the magnesite received by it constituted a dividend. In fact, the value of the magnesite received by General in 1953, while reported by it as a dividend on its Federal income tax return, was ultimately determined by the Federal Government to be taxable as a royalty. In enacting the Code in 1954, however, Congress added Code §902(d) to the federal tax laws. Under this special provision the magnesite payments from Oemag to General are treated as a distribution and, hence, as a dividend if out of earnings and profits. On the other hand, the shares of stock received by General from Oemag in 1954 were includi-

---

tion of the entire amount received since all of such dividends are included on federal taxable income. There are other similar dividend deduction provisions in the Code, also; but none are relevant here. They are subject to the same analysis, however.

ble in income as a dividend in any event; and General received a federal administrative ruling to this effect.

With this factual background before us, we can summarize the parties' positions. The Commonwealth argues (1) that Pennsylvania "net income" (i.e., federal "taxable income") is a figure ascertained prior to the Pennsylvania deduction for dividends received and, thus, that the status and characterization of the deduction for such dividends is governed by the Corporate Net Income Tax Act and not by the Code; (2) that under the Pennsylvania statute the distribution to General by Oemag was not a dividend; and (3) in any case only dividends received from other corporations doing business in Pennsylvania are deductible.

General, on the other hand, contends that the dividends received deduction is one resorted to in determining Pennsylvania net income so that the federal definitions of its elements control; (2) the distribution in question was a dividend as that term is used both for tax and corporate purposes; and (3) nothing in the Corporate Net Income Tax Act restricts the deduction to devidends received from corporations doing business in Pennsylvania.

In approaching a solution to these issues,[4] we proceed first to the meaning of federal taxable income under the Code for it is this concept which provides the basic measure of the state tax. Taxable income is defined for federal income tax purposes as ". . . gross income, minus the deductions allowed by this chapter. . . ." Code, §63. "This chapter" refers to all of the Code's provisions regarding normal taxes and surtaxes on income as contained in §§1 through

---

[4] The following discussion in this opinion deals specifically with the Act as it must be applied during 1954, the year involved here. However, it is equally relevant to the present application of the Act.

1400 of the Code. In these hundreds of sections exist several groups of corporate deductions: (1) the itemized deductions allowed both individuals and corporations (Code, §§161-175); (2) the special deductions (including the dividends received deduction) allowed corporations (Code, §§241-248); and (3) various particular deductions allowed certain corporations and scattered throughout these sections such as the deduction for depletion (Code, §611), the deduction for exploration and development expenditures (Code, §§615, 616); the deduction for dividends paid by a regulated investment company (Code, §§852, 561); and the deduction allowed a Western Hemisphere Trade Corporation (Code, §922). The deduction of all these items from gross income leaves a particular taxpayer with its federal "taxable income".

Section 2(1)(b) of the Corporate Net Income Tax Act, however, also provides for certain adjustments to federal taxable income in determining Pennsylvania net income. One of these permits a deduction for dividends received from any other corporation to the extent such dividends are still included in federal taxable income. Only after these adjustments are made does the Act provide for the various allocations and apportionments applicable when a corporation transacts part of its business outside of Pennsylvania.

While the precise language of the Act is not a model of clarity in regard to the question before us, we are convinced that the adjustment to taxable income for dividends received can be explained only in terms of the Federal Code. The dividends received deduction stated in the Act is primarily an extension of the already permitted 85% deduction allowed by the Code; and it would be illogical to hold that while the latter 85% is determined by reference to the federal concept of dividends, the former 15% is computed only by reference to some differing state standard. That the state

deduction also encompasses a 100% deduction when the dividends received are from certain foreign corporations does not alter our conclusion. It is not the quantum or source of the dividend that governs; it is the nature of the receipt. Pennsylvania has chosen to treat all dividends alike, no matter what their source, as long as they are included in federal taxable income. If they are, they are deductible exactly as are those dividends federally allowed as a deduction in determining taxable income in the first instance.

Viewed in this light the initial question before us is not really, as suggested by the parties, whether the deduction in question is one made prior or subsequent to the determination of Pennsylvania net income. Rather, it is whether or not the Corporate Net Income Tax Act requires that the deduction be taken by reference to federal standards or state concepts (if, in fact, there is a difference between them). Since we have concluded that the Act inextricably ties the deduction to the Federal Code, the deduction is clearly subject to the federal definition. This conclusion follows from the language of the Corporate Net Income Tax Act and from the history of the deduction and is confirmed by the past administrative practices of the Commonwealth as stipulated by the parties.

Resolution of this issue also disposes of the remaining questions. If a particular receipt is includible in federal gross income as a dividend, then its characterization as such must follow through to the full state deduction for dividends received, whether this be for the remaining 15% of dividends received from United States corporations or the entire 100% received from certain foreign corporations.[5] Under

---

[5] This conclusion is equally true with regard to the varying amounts deductible under Code §245 as dividends received from certain other foreign corporations.

the particular wording of §§902(d), 301 and 316 of the Code, the distribution of the magnesite constituted a dividend to General; while its acquisition of the stock from Oemag was so characterized without resort to the special language of §902(d). Consequently, the entire $1,043,351.96 is deductible by General in computing its State corporate net income tax.

We find no intent in the Act to limit the deduction to dividends received from corporations doing business in Pennsylvania. Such a conclusion would contradict everything we have said above and would again create a dual standard for treating dividends. None of the factors that bear on this point—the statutory language,[6] the administrative history, the stipulation of facts—point to such a result.

The judgment of the court below is affirmed.

Mr. Justice ROBERTS dissents.

---

[6] The definitional clause of the Corporate Net Income Tax Act, §2, 72 P.S. §3420(b), provides: "The following words . . . when used in this act, shall have the meaning ascribed to them in this section, *except where the context clearly indicates a different meaning.*

" 'Corporation'. A corporation having capital stock, joint-stock association, or limited partnership either organized under the laws of this Commonwealth, the United States, or any other state, territory, or foreign country, or dependency, *and doing business in this Commonwealth,* or having capital property employed or used in this Commonwealth by or in the name of itself, or any person, partnership, association, limited partnership, joint-stock association or corporation. . . ." (Emphasis supplied).

It is clearly apparent that this definition was not intended to apply to the word "corporation" in the context of the clause providing a deduction for "dividends received from any other corporation. . . ." (72 P.S. §3420b(a)). The definition was intended to apply to the word "corporation" in the context of the clauses referring to the entities subject to the tax.