## Commonwealth v. The Glatfelter Pulp Wood Company

*Edward T. Baker*, Deputy Attorney General, and *William C. Sennett*, Attorney General, for Commonwealth.

*Robert L. Bast, Townsend, Elliot & Munson,* Philadelphia County and *Victor A. Bihl, Reynolds, Bihl & Schaffner,* for appellant.

SHELLEY, J., May 5, 1969.—This is an appeal by The Glatfelter Pulp Wood Company (hereinafter referred to as "appellant") from the resettlement of corporate net income tax for the year 1958 and from the refusal of appellant's petition for review of said resettlement by the Board of Finance and Revenue (hereinafter referred to as the "board").

A jury trial has been waived in accordance with the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688. The parties have entered into a stipulation of facts. We adopt the stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion, we will discuss those facts which, in our judgment, are essential to the disposition of this case.

Appellant is a Maryland corporation authorized to do business in the states of Maryland, Virginia, Delaware and Pennsylvania, and is a wholly-owned subsidiary of its parent company, P. H. Glatfelter Company, a Pennsylvania corporation, which is a manufacturer of paper and paper products.

During 1958, the tax year involved in this appeal, appellant was engaged in the business of supplying the pulpwood (wood cut to four or five foot lengths and suitable for use in the manufacture of paper) requirements of its parent company and occasionally sold stumpage (uncut trees or standing timber) to parties other than its parent company where the trees were not appropriate for use as pulpwood, or where it was desired to clear an entire tract of woodland of the timber standing thereon for reseeding purposes. In 1958, appellant received the sum of $60,317.01 from the sale to third parties of stumpage on its own

lands, while the total gross receipts from all business of appellant during the year was $2,339,702.31. All of appellant's sales of pulpwood in 1958 were to its parent company.

Appellant supplied the pulpwood requirements of its parent company not only from pulpwood cut from its own lands, but also from pulpwood which it purchased from independent third-party contractors for resale to its parent company. At no time did appellant maintain a stockpile or inventory of pulpwood cut from its own land or purchased from others, since the pulpwood was shipped to the parent company as promptly as conditions permitted.

During 1958, appellant realized a net gain of $56,-892.80 from the aforesaid sales of $60,317.01 to third parties of stumpage located outside of Pennsylvania. In addition, appellant, during 1958, cut stumpage on its own land with its own personnel having a fair market value of $5,408.87 and reported this as a capital gain as permitted under section 631(a) of the Internal Revenue Code, 78 Stat. 97, 98, 26 U.S.C.A. §631. Appellant filed its corporate net income tax report with the Department of Revenue for the year 1958 and deducted the total of the above two capital gain figures, $62,301.67, as the deduction permitted by the Corporate Net Income Tax Act for sale or exchange of tangible assets situated outside of Pennsylvania.

Upon resettlement of the corporate net income tax for 1958, the Commonwealth denied the deduction for the said gains and included them in the net income tax base before application of the allocating percentage. By reason of this disallowance, the Commonwealth claimed an additional tax for 1958 in the amount of $2,651 in addition to the tax already paid by appellant of $1,876.01.

Appellant concedes that $224.86 of this asserted deficiency is due, since, under the decision in Commonwealth v. Scott Paper Company, 425 Pa. 444 (1967), the $5,408.87 gain from stumpage cut by its own personnel (allowed under section 631(a) of the Internal Revenue Code, supra) is not deductible, so that the tax amount in dispute is $2,426.14. Appellant, however, contends that the sale of stumpage outside of Pennsylvania to third parties was and is a properly allowable deduction.

The sole question is whether the sale of stumpage to third parties, which was properly reported as capital gains under the Internal Revenue Code, supra, is a sale of a capital asset under section 2.2(b) of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended, 72 PS §3420(b)(2). It is the contention of the Commonwealth that the sale of stumpage by appellant was not a sale of a capital asset under section 2.2(b), supra.

Section 3 of the Corporate Net Income Tax Act, supra, 72 PS §3420(c), provides that:

"Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, . . . a State excise tax at the rate of six per centum per annum upon each dollar of net income of such corporation received by, and accruing to, such corporation during the calendar year one thousand nine hundred thirty-five, . . . and a similar tax at the rate of five per centum per annum upon each dollar of the net income of such corporation received by and accruing to such corporation during the calendar years . . . one thousand nine hundred fifty-five. . . ."

The term "net income" as used in the above section is defined in section 1(b) of the Corporate Net Income Tax Act, supra, 72 PS §3420(b), in part, as follows:

". . . taxable income for the calendar year or fiscal year as returned to and ascertained by the Federal Government. . ."

Under section 2.2(b) of the Corporate Net Income Tax Act, supra, as amended, 72 PS §3420(b)(2)(b), a corporate taxpayer with business outside the Commonwealth is permitted to deduct from its reported income before application of the allocating percentage, the following:

"Gains realized and losses sustained from the sale or exchange of capital assets, if such assets consist of real estate or tangible personal property situated outside of the Commonwealth, . . ."

The term "capital asset" is not defined anywhere in the Corporate Net Income Tax Act, supra, but this court in Commonwealth v. Scott Paper Company, 82 Dauph. 215 (1964), has adopted the definition set forth in section 1221 of the Internal Revenue Code, 68A Stat. 321, 26 U.S.C.A. §1221, which provides as follows:

". . . 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; . . ."

Our Supreme Court indicated on the appeal in the Scott case, supra, its approval of our adoption of the Federal definition of "capital asset."

Appellant in the instant case has removed entirely from taxable income net gains from third parties for the sales of "stumpage" on its own timber lands. This was done pursuant to section 2(b) of the Corpo-

rate Net Income Tax Act, supra. It is the Commonwealth's position that the gains in question are not to be so allocated and remain as ordinary income to be apportioned in accordance with the apportionment fractions. Both the Commonwealth and the appellant rely on our decision affirmed by the Supreme Court in Commonwealth v. Scott Paper Company, 82 Dauph. 215 (1964), affirmed 425 Pa. 444 (1967):

In order to determine the propriety of appellant's attempted allocation of certain income in accordance with the Scott opinions, it is initially necessary to set forth the business activities of appellant. Appellant is a Maryland corporation incorporated July 5, 1918, and having its principal place of business at Spring Grove, Pa. Its articles of incorporation state that its business purposes are to manufacture pulpwood, to manufacture lumber and to operate saw mills and to acquire and deal in real estate. Appellant's certificate of authority in the Commonwealth of Pennsylvania states that its powers are to acquire, invest in, sell or exchange real estate.

During the year in question, appellant was a wholly-owned subsidiary of the P. H. Glatfelter Company, a Pennsylvania business corporation with its principal place of business in Spring Grove, Pa., and which was engaged generally in the manufacture of paper and paper products. During 1958, appellant owned and managed timber lands located in Delaware, Maryland, Virginia and Pennsylvania. It also acted as a broker in acquiring and selling pulpwood to its parent company. Appellant supplied the pulpwood requirements to its parent company from wood which it cut from its own lands and pulpwood which it acquired from third-party contractors for resale to its parent company.

The majority of all timber cut from appellant's own lands in 1958 was used to meet the pulpwood require-

ments of its parent company; however, appellant's timber lands contained timber which could not be used for pulpwood but which could be disposed of as "saw" timber. During the year 1958, appellant sold this saw timber to parties other than its parent company, and on occasions, in 1958, appellant sold "stumpage" to parties other than its parent company. "Stumpage" refers to standing timber to which appellant sells the cutting rights to third parties.

It is the Commonwealth's position that appellant is generally engaged in one business enterprise dealing with timber, timber lands, pulpwood and saw timber. All of appellant's operations are interrelated and all operations, whether it be selling pulpwood to its parent company or selling stumpage to third parties, are designed to further appellant's general business purpose.

During the year 1958, appellant received net gains from the sale of stumpage in the amount of $58,567.40. Of this amount, $56,553.54 represented gains from the sale of stumpage located outside of Pennsylvania. The total gain in question was reported for Federal income tax purposes by appellant for the year 1958, as to be accorded the capital gain treatment provided for under section 631(b) of the Internal Revenue Code, supra. Such treatment was afforded by the Federal government under the provisions of the code. Appellant is seeking to have allocated as a capital gain under the Pennsylvania Corporate Net Income Tax the amount of gain so noted. The result of such treatment would be to remove entirely from taxation approximately $56,550 of the gain and subject approximately $2,000 of the gain to 100 percent taxation without the apportionment fractions being applied. The Commonwealth contends that the gain is not a gain realized from the sale or exchange of a capital asset, and, hence, should

not be allocated to any extent but retained in taxable income to be apportioned. The gain from the saw timber cut by appellant's own personnel and sold to third parties is not in question, since appellant reported and conceded that this gain should not be allocated but remain in taxable income.

Prior to the Scott Paper Company case, many taxpayers had contended that for purposes of the Pennsylvania Corporate Net Income Tax Act, those gains treated by the Federal Government as capital gains must be so treated by the State government. In other words, the position of these taxpayers was that, since under our decision of Commonwealth v. General Refractories Company, 82 Dauph. 229 (1964), affirmed 417 Pa. 153 (1965), the Commonwealth is bound by the Federal determination of "dividends", it should similarly be bound by the Federal determination of "capital gain." This court, affirmed by the Supreme Court in the Scott case, stated that such was not the law. We said in the Scott case, at pages 222 and 223:

"In fact, except where the Legislature has chosen to establish a Federal standard, as we concluded it did with respect to 'dividends' in General Refractories, it would appear that the Pennsylvania taxing authorities are free to use their own reasonable discretion in construing and applying the deductions allowed by our legislative enactment.

"Therefore, merely because the Federal Government sees fit to grant special tax advantages to enterprises such as Scott, does not bind the taxing authorities of the Commonwealth of Pennsylvania to grant identical advantages in applying the clear provisions of the Corporate Net Income Tax Act."

This conclusion was affirmed by the Supreme Court, which said, at pages 452 and 453:

"We believe that the language of the C.N.I. Act and the history of this language do not evidence a legislative intent to deny to the Commonwealth the right to make its own determination of what constitutes the sale or exchange of a capital asset giving rise to gain allocable as stated by the Act. While this determination may parallel the federal one in most cases, it is not automatically governed thereby but must be based on Pennsylvania's own decision as to what is a capital asset and what is a sale or exchange."

Thus, merely because the Federal government has afforded appellant capital gains treatment for the sale of its stumpage, the Commonwealth, in applying its Corporate Net Income Tax Act, need not afford the same treatment.

After concluding that it was not bound by the Federal capital gain concept, we held that the gain representing timber used by Scott in its own pulp and paper manufacturing operations was not a gain from the sale or exchange of tangible assets. This was the gain reported by Scott for Federal income tax purposes pursuant to section 631(a) of the Internal Revenue Code.

We next determined the nature of the gain realized from timber sold by Scott to third parties. It is to be remembered that Scott's primary business activity is the manufacture of paper and paper products. It was concluded that this gain was realized from the sale or exchange of a capital asset and as such, qualified for allocation under the Corporate Net Income Tax Act. We based our conclusion on the fact that the gain was relatively small compared to the sale of paper products, and that the corporate balance sheet did not include as inventories, timber or logs. On page 225, we said:

"These factors all indicate that the timber sold was not part of Scott's inventory as that term is normally used, nor was such sale in the ordinary course of its business of manufacturing and selling paper products."

The amount so involved was similarly reported by Scott pursuant to section 631(a) of the Internal Revenue Code.

Therefore, we determined the nature of gains reported by Scott pursuant to section 631(b) of the Internal Revenue Code. For the same reason expressed in its conclusions as to the sale of logs, we similarly concluded that the sale of stumpage, or the right to cut timber represented gain subject to allocation.

In the instant case, the gain in question is from the sale of stumpage or the right to cut timber granted to third parties. Further, in the instant case, the gain in question was reported by appellant for Federal income tax purposes under section 631(b) of the Internal Revenue Code. Thus, the holding in Scott would seem on its face to sustain appellant's position. However, in the instant case, there is a basic factual difference which converts our holding in Scott to an authority for sustaining the Commonwealth's taxation. Appellant in the instant case is not engaged in the manufacture of paper and paper products. Its business activity is the growing and harvesting of timber and the purchase of timber for its parent company. Its entire income arises from the timber or wood business. There is no income from the manufacture of paper products. Thus, our reasons in Scott for holding certain gains as being subject to allocation are not present under the instant factual situation. The only sales of appellant during the year in question were of timber, pulpwood or timber cutting rights. Appellant had no inventory of any items but rather sold the timber or pulpwood as soon as it was

acquired, the acquisition being either from third parties or its own timber land. The "saw" timber, although of a different nature than pulpwood, still was timber and unquestionably comes within the appellant's general business purposes.

The stipulation of facts sets forth the amount of gain realized by the sale of stumpage for the years 1957 through 1961. It is evident that the amounts represent a substantial portion of appellant's income and cannot, as in Scott, be classified as a relatively small portion of appellant's total sales. Even considering appellant's gross sales as the base, the amount represented by stumpage sales still is substantial.

Therefore, it must be concluded that our decision in the Scott case is authority for the Commonwealth's taxation of appellant's 1958 corporate net income tax. Since appellant was engaged in a single business enterprise and was not, as was Scott, engaged in the manufacture of paper products, the sale of stumpage did not represent gain from the sale of a capital asset.

On appeal by Scott to the Supreme Court, our conclusion was, in effect, sustained as to the gain represented by section 631(a) of the Internal Revenue Code. The Supreme Court stated that, unquestionably, there was no transfer or sale when Scott consumed the timber in its manufacturing operations. Since that was the only issue before the court, a determination of the gain represented by section 631(b) of the Internal Revenue Code could have been avoided. However, the Supreme Court commented on this portion of the case, at page 453, footnote 6:

"[6]In fact, as if to illustrate Scott's argument regarding the difficulties inherent in these matters, we note that the capital gain produced from the timber

sold by Scott to others was not a gain resulting from a sale or exchange either. It arose, also, from the cutting of the timber; and the subsequent sale by Scott only affected Scott's ordinary income. See Internal Revenue Code of 1954, §631(a) and Regs. §1.631-1(e). However, since the Commonwealth did not appeal from that part of the lower court's decision allowing Scott to allocate this part of the gain, we need not review this point further."

Although this statement is dicta since the issue was not before the court, it is strong dicta to conclude that there was no sale or exchange of a capital asset in any of Scott's operations. Thus, any comfort the instant appellant may have in our determination in Scott is diminished by this statement of the Supreme Court.

The gain in question is not a gain from the sale or exchange of a capital asset. Apart from the judicial determinations and statements on the Scott Paper Company case, it is obvious that the gain received by appellant from the sale of stumpage is not a gain from the sale or exchange of a capital asset. We said, in commenting upon a capital asset in the Scott Paper Company case, at page 224:

"Unfortunately, the term 'capital asset' is not defined anywhere in the Corporate Net Income Tax Act, nor has it been, to our knowledge, defined by any Court decision in this Commonwealth. The definition found in §1221 of the Internal Revenue Code is as follows:

" '. . . "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include: (1) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale

to customers in the ordinary course of his trade or business.'

"While the sale of timber is certainly within the avowed corporate purposes of Scott, it could not logically be argued that such sale is in the ordinary course of its trade or business. An examination of its annual report to shareholders for the year 1955, appended to the stipulation of facts, indicates that its business is almost exclusively the manufacture and sale of a great variety of paper products. Its total net sales for 1955 were $246.7 million, of which $187.9 million was Scott trade-marked paper products, and $58.7 million was pulp and other paper. Thus, the sale of the logs and standing timber was relatively small compared to the sale of paper products, paper and pulp. Further, on the corporate balance sheet, under current assets, the item 'inventories' does not include timber or logs. On the other hand, timber resources are a separate item of $16.1 million after plant assets of $134 million."

Applying the definition and the other statements of the court to the instant factual situation, it is apparent that appellant's receipts from the sale of stumpage must be termed ordinary income. The timber should be included in the normal inventory of appellant at the close of the taxable year, and the timber is held by appellant primarily for sale to customers in the ordinary course of its trade or business.

As compared to the gross sales of appellant during the year in question, the sales of stumpage represent an appreciable amount. To remove this amount from the tax base to be apportioned by the apportionment fraction would frustrate the legislative intent. The gain from the sale of stumpage is a basic portion of appellant's business and occurs each year. It should be subject to apportionment as appellant's other income in order that appellant's percentage of business

be properly apportioned to the Commonwealth. To allow such a large amount to be removed from taxable income would make the remaining tax provisions meaningless.

Appellant itself has retained in taxable income the gain from the sale of "saw" timber cut by its own employes and sold to third parties. It would appear appellant's contention that where the "saw" timber is sold as standing timber, the gain becomes subject to allocation would be illogical. If "saw" timber is a capital asset of appellant, it should make no difference whether it is cut or sold by appellant or sold as standing timber to be cut by others.

In order to fairly compute appellant's corporate net income tax for the year in question, the income from the sale of stumpage must be retained in the tax base. The Commonwealth has considered certain gains by appellant as being from the sale or exchange of capital assets. These are set forth in paragraph 16 of the stipulation of facts and are designated "building", "land" and "building lots." Clearly, such items are capital assets and are not within the general business activities of appellant.

In our opinion in the Scott case, we held, in part, that where gains are reported to the Federal government under section 631(b) of the Internal Revenue Code, those gains must be allocated as capital gains under the provisions of the Corporate Net Income Tax Act. However, in the Scott case, the general business activity of the taxpayer was the manufacture of paper and paper products. The gain realized from granting cutting rights of timber to third parties was not within the general business activity of Scott and, hence, was properly termed the gain from the sale of a capital asset.

In the instant case, appellant is not engaged in the manufacture of any commodity, but rather its general

business activity is a production of timber and logs which are not only sold primarily to its parent corporation, but are also sold to third parties. Since appellant's entire income arises from the sale of timber or logs, there is no gain from the sale of a capital asset in the sale of stumpage. This is particularly true when the gain occurs consistently every year and is a substantial amount as compared with appellant's gross sales or taxable income.

Considering what we have said, we conclude that all of the specifications of objections of appellant inconsistent with this opinion must be overruled.

Accordingly, we make the following

### ORDER

And now, May 5, 1969, all specifications of objections inconsistent with this opinion are overruled. The Commonwealth is directed to compute appellant's corporate net income tax for the year 1958 in accordance with this opinion and when so calculated, judgment will be entered for the Commonwealth in the amount so determined.