Amidon et al., Appellants, *v.* Kane.

Argued May 26, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Perrin C. Hamilton,* with him *Walter T. Darmopray, Joseph A. Malloy, Jr.,* and *Hamilton, Darmopray, Malloy & Milner,* for plaintiffs, appellants.

*Sidney M. DeAngelis,* for plaintiff, appellant.

*Robert E. Wayman,* with him *Wayman, Irvin, Trushel and McAuley,* for plaintiffs, appellants.

*Israel Packel,* with him *Frank P. Lawley, Jr., William H. Smith,* and *J. Shane Creamer,* Attorney General, for Secretary of Revenue et al., appellees.

OPINION BY MR. JUSTICE ROBERTS, June 24, 1971:

In this consolidated appeal, we are asked to review a May 20, 1971 decree of the Commonwealth Court dismissing three separate complaints in equity challenging the constitutionality of the recently enacted Personal Income Tax provided by Article III of the Tax Reform

Code of 1971, adopted March 4, 1971, Act No. 2, 72 P.S. §7107 et seq.[1]

The various plaintiff-appellants advance four arguments in support of their claims that the Personal Income Tax is repugnant to the Pennsylvania Constitution. First, it is contended that the tax violates Article VIII, Section 12(a) by virtue of its enactment without the Governor's submission to the General Assembly of a balanced operating budget. Second, it is urged that the tax constitutes an illegal delegation of legislative power in contravention of Article II, Section 1. Third, it is claimed that the tax illegally exempts property from taxation in violation of Article VIII, Section 5. And finally, it is argued that the tax ignores the mandate of Article VIII, Section 1 that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, . . . ."

After careful and considerable study, we conclude that the tax in question offends the constitutional requirement of uniformity and that it is for this reason invalid.

Preliminarily, it is noted that we are not unmindful of the fiscal problems and difficulties besetting the Commonwealth. We must at the same time, however, emphasize that our awareness and full appreciation of these problems cannot in any way enlarge or otherwise affect our limited constitutional role in this adjudication.

The selection of subjects for taxation, their classification, and the method of collection are legislative matters. *Jones & Laughlin Tax Assessment Case*, 405 Pa.

---

[1] The decision was rendered by a divided Commonwealth Court. Judge WILKINSON filed an opinion in support of the Court's decree in which three other judges joined. President Judge BOWMAN filed a dissenting opinion in which Judge MENCER joined. Judge MENCER filed a separate dissenting opinion and Judge KRAMER filed a concurring and dissenting opinion.

421, 175 A. 2d 856 (1961). Thus, this Court may not consider the wisdom of a challenged tax or the purpose of its enactment. *Blauner's, Inc. v. Philadelphia,* 330 Pa. 342, 198 Atl. 889 (1938). So long as a statute is constitutional, the Legislature is the sole judge of its necessity or expediency and a court cannot refuse to enforce it on any ground that it is unjust, unwise, inexpedient, obsolete or contrary to any supposed policy or custom. *Olin Mathieson Chemical Corporation v. White Cross Stores, Inc.,* 414 Pa. 95, 98, 199 A. 2d 266, 267 (1964); *Lurie v. Republican Alliance,* 412 Pa. 61, 65, 192 A. 2d 367, 370 (1963); *Commonwealth ex rel. Kelley v. Cantrell,* 327 Pa. 369, 193 Atl. 655 (1937); *Commonwealth ex rel. Kelley v. Clark,* 327 Pa. 181, 193 Atl. 634 (1937); *Harris v. Mercur,* 202 Pa. 313, 51 Atl. 969 (1902); *Journeay v. Gibson,* 56 Pa. 57 (1868); *Steiner v. Coxe,* 4 Pa. 13 (1846); see also *Commonwealth v. Life Assurance Company of Pennsylvania,* 419 Pa. 370, 377-78 n. 11, 214 A. 2d 209, 215 n. 11 (1965), appeal dismissed, 384 U.S. 268, 86 S. Ct. 1476 (1966).

Conversely, however, we cannot deem a legislative enactment constitutional merely because it may seem in our view to be just, expedient, necessary or wise, or because it enjoys unanimous popular support. The Constitution is in matters of state law the supreme law of this Commonwealth to which all acts of the Legislature and of any governmental agency are subordinate, *Pittsburgh Railways Co. v. Port of Allegheny County Authority,* 415 Pa. 177, 202 A. 2d 816 (1964); *Cali v. Philadelphia,* 406 Pa. 290, 177 A. 2d 824 (1962), and it is our duty and responsibility to consider *only* whether the legislation meets or violates constitutional requirements. *Stander v. Kelley,* 433 Pa. 406, 250 A. 2d 474 (1969). Accordingly, quite aside from the instant tax's possible social, economic or other merit, we must

determine whether it satisfies the constitutionally mandated standard of uniformity.

The Personal Income Tax contained in Article III of the Tax Reform Code of 1971 operates as follows:

Section 305 of the Code purports to impose a tax "[f]or the privilege of receiving, earning or otherwise acquiring income from any source whatsoever . . . ." However, the annual tax of 3½% is levied not upon all income "from any source whatsoever" but rather only upon "the taxable income of the taxpayer". "Taxable income" is defined in Section 302(q) to mean with a few specific variations "the same as 'taxable income' as defined in the Internal Revenue Code . . . ."[2]

---

[2] Section 302(q) provides in full:

" 'Taxable income.' Except as otherwise provided herein, 'taxable income' means the same as 'taxable income' as defined in the Internal Revenue Code and will include the sum of the following tax preference items as defined in section 57 of the Internal Revenue Code, as amended, (i) excess investment interest; (ii) accelerated depreciation on real property; (iii) accelerated depreciation on personal property subject to a net lease; (iv) amortization of certified pollution control facilities; (v) amortization of railroad rolling stock; (vi) stock options; (vii) reserves for losses on bad debts of financial institutions; (viii) depletion; and (ix) capital gains which is required to be returned to and ascertained by the Federal Government pursuant to said code, subject to the following adjustments:

(1) Subtraction of interest income derived from obligations of the United States Government to the extent included in adjusted gross income.

(2) Addition of interest income derived from obligations of states, political subdivisions, instrumentalities and public authorities thereof other than Pennsylvania or its political subdivisions, instrumentalities or public authorities to the extent not included in adjusted gross income.

(3) In the case of a nonresident individual, estate or trust estate or trust 'taxable income' and the adjustments required by subsections (a) and (b) above shall include only income derived from sources within this Commonwealth.

The concept of taxable income in the Internal Revenue Code is of course an artificial construct, in many ways far removed from the common and ordinary meaning of the term income. For example, income derived from gifts and inheritances, interest on the obligations of a state or political subdivision, contributions by employers to employee health and accident plans, and the first one hundred dollars received by a taxpayer as dividends from domestic corporations is all specifically excludable from taxable income.[3] In addition, the Internal Revenue Code permits the deduction of myriad items from actual or gross income in order to compute taxable income.[4] Some of the more common and well known examples of such deductions are real estate taxes, interest on real estate mortgages and other personal financing, alimony payments, and various other state and local taxes.[5]

---

(4) The respective shares of an estate or trust and its beneficiaries in the additions and subtractions to taxable income shall be in proportion to their respective shares of distributable net income of the estate or trust as defined in the Internal Revenue Code. If the estate or trust has no distributable net income for the taxable year, the share of each beneficiary in the additions and subtractions shall be in proportion to his share of the estate or trust income for such year, under local law or the terms of the instrument, which is required to be distributed currently and any other amounts of such income distributed in such year. Any balance of the additions and subtractions shall be allocated to the estate or trust.

(5) In the case of a nonresident estate or trust, the respective shares of the estate or trust and of its beneficiaries shall be determined in the manner set forth by this subsection (q) ; however, in determining the taxable income of a nonresident estate or trust or of any nonresident beneficiary thereof, there shall be taken into account only the income of the estate or trust, or the beneficiary's share thereof, derived from sources within this Commonwealth."

[3] See Int. Rev. Code of 1954, §§102, 103, 106, 116.

[4] See Int. Rev. Code of 1954, §§141-217.

[5] Many of the deductions and exemptions allowed by federal tax law are unrelated to considerations of revenue raising or equal-

The structure of the Pennsylvania Personal Income Tax may be alternatively illustrated and perhaps clarified by consideration of the following schematic summary of Internal Revenue Service Form 1040, the officially prescribed form for individual federal income tax returns.[6]

## TABLE I
### FORM 1040

| Line No. | Description | |
|---|---|---|
| 12 | WAGES, SALARIES, TIPS | |
| 13 | +DIVIDENDS | |
| 14 | +INTEREST | |
| 15 | +OTHER INCOME | (business income; capital gains; pensions and annuities, rents and royalties, partnerships, estates or trusts, etc.; farm income; miscellaneous income) |
| 16 | TOTAL (LINES 12-15) | |
| 17 | —ADJUSTMENTS | (sick pay; moving expenses; employee business expense; self-employed retirement plan) |
| 18 | ADJUSTED GROSS INCOME | |

ization of the tax burden; they pertain instead to the furtherance of various national non-tax policies. See, e.g., *United States v. Pleasants*, 305 U.S. 357, 59 S. Ct. 281 (1939) (charitable deductions); *Helvering v. Bliss*, 293 U.S. 144, 55 S. Ct. 17 (1934) (exclusion of income derived from state and municipal bonds); *E. F. Fox v. United States*, 397 F. 2d 119 (8th Cir. 1968) (same).

Senator William Proxmire, Chairman of the Joint Economics Committee of the United States Congress, has just made public statistics compiled by the Treasury Department indicating that the special consideration to certain groups and types of activity afforded by various Federal tax provsions result in total Federal tax preferences amounting to approximately 40 *billion* dollars annually. A copy of these statistics is on file in the office of the Prothonotary of this Court.

[6] See Treas. Reg. §601.602 concerning §6011(a) of the Code: "Forms and instructions are developed by the Internal Revenue Service to explain the requirements of the internal revenue laws and regulations and are issued for the assistance of taxpayers in

47 —DEDUCTIONS     (medical and dental expenses; taxes; contributions; interest; misc.)

49 —PERSONAL EXEMPTIONS

50 TAXABLE INCOME

In other words, the Pennsylvania Personal Income Tax is tied directly to "line 50" of IRS Form 1040, the amount appearing on that line being subject to the 3½% annual tax.

As is readily apparent from an examination of Table I, most of the discrepancies between an individual's *actual* total income "from any source whatsoever" and his Pennsylvania "taxable income" arise as a consequence of the subtraction of the various adjustments, deductions, and exemptions appearing between lines 16 and 50. As to some taxpayers, however, even line 16 does not reflect all income from whatever source. As stated above, the Internal Revenue Code provides that certain species of income are altogether excludable from taxable income. Thus, for example, a person whose only income is in the form of interest received from state or municipal bonds (tax exempts) need not report any of such income on any of the lines prior to line 16 with the result that the amount entered on line 16 will be zero.

After defining taxable income in terms of the federal tax base,[7] the Tax Reform Code of 1971 provides four

exercising their rights and discharging their duties under the internal revenue laws. . . ." The Regulation continues by stating that copies of all necessary forms and instructions may be obtained from district directors and also that Publication No. 481, Description of Principal Federal Tax Returns, Related Forms, and Publications may be purchased from the Superintendent of Documents, U. S. Government Printing Office, Washington, D. C. 20402.

[7] As mentioned earlier, the concept of taxable income in the Pennsylvania tax does vary somewhat from the concept of federal

types of tax credits. Section 316 allows a credit for income taxes imposed by another state, Section 317 provides a similar credit for 30% of certain local taxes, and Section 318 deals with a credit for taxes paid by a trust on accumulated income. Finally, Section 319 sets out a variable schedule of "vanishing tax credits" for the benefit of individuals whose state taxable income does not exceed $9,900.

Does then the foregoing scheme of taxation conform to the requirements of the Uniformity Clause?

The constitutional imperative of uniformity in the imposition of taxes has remained unchanged since its first adoption in the Pennsylvania. Constitution of 1874.[8] Article IX, Section 1 of that constitution directed without qualification that: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Legislative

---

taxable income. Whereas the Internal Revenue Code generally includes in taxable income interest on obligations of the United States and excludes interest on the obligations of states or their political subdivisions, the instant tax *excludes* interest on the obligations of the United States and *includes* interest on the obligations of states and political subdivisions other than Pennsylvania and its political subdivisions. Compare Int. Rev. Code of 1954, §103 with the Tax Reform Code of 1971, §§302(q) (1), (2). In addition, the Pennsylvania tax does not give any tax preference to the "items of tax preference" contained in Int. Rev. Code of 1954, §57. See Tax Reform Code of 1971, §302(q). Finally, the Pennsylvania tax makes certain adjustments with respect to nonresident individuals and with respect to estates or trusts. See Tax Reform Code of 1971, §§302(q) (3), (4), (5).

[8] Prior to 1874 there had been no express state constitutional provision on the power to tax other than the Bill of Rights with its implication "against all unjust, unreasonable and palpably unequal exactions under any name or pretext." *Washington Avenue*, 69 Pa. 352, 363 (1871) ; *Hammett v. Philadelphia*, 65 Pa. 146 (1869) ; see Note, The Pennsylvania Constitutional Requirement of Uniformity in Taxation, 87 U. Pa. L. Rev. 219 (1938).

proposals to amend the Uniformity Clause were rejected by the electorate in 1913 and 1928,[9] and the May, 1967 referendum submitted to the people of Pennsylvania concerning whether a constitutional convention would be called specifically provided that the convention would *not* revise that portion of the constitution. Likewise, the constitutional convention enabling act stated in no uncertain terms that ". . . nor shall that part of Article IX, Section 1 of the Constitution providing that: 'All taxes shall be uniform . . .' be *modified, altered or changed in any respect whatsoever."* Act of March 16, 1967, P. L. 2, §7, [1967] Pa. Laws 7. (Emphasis added.)

In addition to its unbroken historical continuity, the constitutional standard of uniformity also possesses widespread and far reaching application. While some other jurisdictions adhere to the view that uniformity applies only to property taxes,[10] our particular constitutional mandate that "[a]ll taxes shall be uniform . . ." is quite clear, and it is settled that this mandate applies to all species of taxes. As was stated in *Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 196 A. 2d 664 (1964) : "The question of whether or not the constitutional requirement of uniformity applies to a particular kind of tax depends upon the peculiar wording of the requirement itself. The Pennsylvania Constitution specifically states that '*All taxes* shall be uniform, upon the same class of subjects.' (Emphasis supplied.) This language is as broad and comprehensive as it could possibly be and must necessarily be construed to include all kinds of taxes, be they in the nature of property or excise levies. The Pennsylvania constitutional provision is all inclusive and is clearly not limited to requiring uni-

---

[9] *Kelley v. Kalodner*, 320 Pa. 180, 192, 181 Atl. 598, 603 (1935) ; see Callendar, The Constitution—Should It Be Revised?, 29 Pa. B.A.Q. 205 (1958).

[10] Cooley on Taxation, §267 (4th ed. 1924).

formity on property taxes alone. See Banger's Appeal, 109 Pa. 79 (1885); Cope's Estate, 191 Pa. 1, 43 A. 79 (1899); Kelley v. Kalodner, supra [320 Pa. 180, 181 Atl. 598 (1935)]; Com. ex rel. v. A. Overholt & Co., Inc., 331 Pa. 182, 200 A. 849 (1938); and 51 Am. Jur., Taxation, §157." Id. at 319, 196 A. 2d at 666. It is thus quite clear that the instant tax must satisfy the requirement of uniformity.

The substantive content of the Uniformity Clause is of course less susceptible to precise definition than is the scope of its application. However, certain general principles are well established. As this Court declared in the *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480 (1952): "[The Uniformity Clause] means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class: Commonwealth v. Girard Life Insurance Co., 305 Pa. 558, 158 A. 262; Knisely v. Cotterel, 196 Pa. 614, 46 A. 861; Dufour v. Maize, 358 Pa. 309, 56 A. 2d 675; Commonwealth v. McCarthy, 332 Pa. 465, 3 A. 2d 267; Dole v. Philadelphia, 337 Pa. 375, 11 A. 2d 163. . . .

"Uniformity requires substantial equality of tax burden: Com. v. Overholt & Co., Inc., 331 Pa. 182, 200 A. 849; Com. v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319; Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29. While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained (Wilson v. Philadelphia, 330 Pa. 350, 352, 198 A. 893), the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited: Cf. Com. v. Overholt & Co., Inc., 331 Pa. 182, 190-191, 200 A. 849; Pollack v. Farmers' Loan

and Trust Co., 157 U.S. 429, 599. Moreover while reasonable and practical classifications are justifiable, where a method or formula of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated: Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 184 A. 37; Hans Rees' Sons v. North Carolina, 283 U.S. 123.

"We may aptly repeat what was said by (former Chief) Justice MAXEY in Com. v. Overholt & Co., Inc., 331 Pa., supra, page 191: 'A tax to be uniform must operate alike on the classes of things or property subject to it. . . .'" Id. at 167-68, 170, 87 A. 2d at 483, 484.

In addition to these general principles, two prior decisions of this Court are particularly pertinent to our disposition of this appeal.

The first of these, *Kelley v. Kalodner*, 320 Pa. 180, 181 Atl. 598 (1935), involved a 1935 Pennsylvania statute imposing an annual tax upon the entire net income of Pennsylvania residents and upon net income received by nonresidents from property owned or from any business or occupation carried on in the Commonwealth.[11] That act authorized many exemptions for purposes of calculating "gross income" and numerous deductions for the computation of "net income". It likewise sought to enact a standard deduction for living expenses ($1,000 in the case of single persons and $1,500 in the case of married persons and heads of households), and an additional $400 deduction for each dependent under the age of eighteen. The tax was then imposed upon net income at a graduated rate: incomes under five thousand dollars were taxed at 2%; incomes between five and ten thousand dollars at 2½%; incomes between ten and twenty-five thousand dollars at 3%; etc. Reason-

---

[11] Act of July 12, 1935, P. L. 970, formerly 72 P.S. §3402-1 et seq.

ing as follows, this Court declared the tax invalid: "The question then arises, does the act fulfill the rule of uniformity prescribed by the Constitution. Plaintiffs contend it does not and for several reasons. The first is that the provision exempting from taxation those persons whose incomes fall below $1,000 or $1,500, depending upon whether they are single or married, shows upon its face a lack of uniformity. There can be no doubt that these exemptions were inserted for the purpose of putting the burden of the tax upon those most able to bear it, *but it results in taxing those whose incomes arise above a stated figure merely because the legislature believes their incomes are sufficiently great to be taxed. It is obvious that the application of the tax is not uniform.* . . . Moreover, the tax is in violation of the uniformity clause in its application to the persons whose incomes fall within the various brackets designated in the act. . . ." 320 Pa. at 188-89, 181 Atl. at 602 (emphasis added). The *Kelley* decision, in other words, clearly involved an alternative holding: the tax was deemed constitutionally deficient both because of the personal exemptions and because of the graduated rate.

The second of the two decisions most significant to the instant case is *Saulsbury v. Bethlehem Steel Company,* supra, decided in 1964. In that case we ruled then an "occupation and occupational privilege tax" which exempted individuals with an annual income of less than $600 transgressed the limits of uniformity. In so holding, this Court reaffirmed the rule of *Kelley v. Kalodner* and largely on the basis of that decision concluded that: "If a tax is levied on an occupational privilege, it must apply to *all* who share the privilege. Part of this class may not be excused, regardless of the motive behind the action." 413 Pa. at 320, 196 A. 2d at 666 (emphasis added).

It is true that the challengers of the constitutionality of state or local taxation bear a heavy burden in their efforts to overturn such legislation. See, e.g., *Commonwealth v. Life Assurance Company of Pennsylvania*, supra, at 376-77, 214 A. 2d at 214. Nevertheless, in comparing the taxing scheme in *Kelley* and *Saulsbury* with that involved in the instant case, the conclusion is unescapable that the personal income tax presently challenged violates uniformity. Although the Tax Reform Code of 1971 purports to impose a flat $3\frac{1}{2}\%$ tax upon "taxable income", the concept of "taxable income" already reflects the federal personal exemptions for the taxpayer and his qualified dependents. (See Table I, supra, lines 49 and 50.) Thus, built-in to the Tax Reform Code of 1971 are *exactly the same elements of nonuniformity* as were condemned in both *Kelley* and *Saulsbury*.

A further noteworthy feature of inequality is the instant tax's exclusion from taxable income of all interest received on the obligations of the Commonwealth or any of its political subdivisions. The Tax Reform Code of 1971 imposes in its own terms a tax "[f]or the privilege of receiving, earning or otherwise acquiring income from any source whatsoever . . . ." The holder of tax exempt Pennsylvania securities certainly enjoys this privilege of receiving income yet is not taxed for the privilege but instead is given a tax preference. This situation is manifestly contrary to our holding in *Saulsbury* that a tax upon a privilege ". . . must apply to all who share the privilege." In addition, despite the existence of a legislative policy favoring this type of tax preference for state and local obligations of this Commonwealth, such a legislative policy cannot prevail over a clear constitutional mandate of uniformity.

We need not, however, limit our present analysis to these particular inequalities, for the Personal Income

Tax is replete with other commonly occurring instances of nonuniformity, many of which can be conveniently illustrated in the following tables. The examples contained in these tables have been consciously chosen to reflect the state income tax liability of typical taxpayers claiming representative exemptions and deductions.[12]

## TABLE II

*Taxpayers "receiving, earning or otherwise acquiring [$10,000] income from any source whatsoever."* (Sec. 305)

| | A SELF EMPLOYED | B WAGE EARNER | C WAGE EARNER |
|---|---|---|---|
| Home: | $20,000 | $20,000 | Renter |
| Mortgage: | $10,000 | $10,000 | None |
| INCOME | $10,000 | $10,000 | $10,000 |
| DEDUCTIONS: | | | |
| *Medical* | | | |
| Insurance | **150** | **150** | |
| Other | 200 | 200 | |
| *Taxes* | | | |
| Real Estate (30 mills) | 600 | 600 | |
| 1% Local Income Tax | 100 | 100 | |
| Pa. 3.5% Income Tax | 180 | 210 | (Standard |
| Pa. Sales Tax | 100 | 100 | deduction) |
| Gasoline Tax | 80 | 80 | |
| *Contributions* | | | |
| 3% Contributions | 300 | 300 | |
| *Interest* | | | |
| Mortgage (7½%) | 750 | 750 | |
| Auto Loan | 180 | 180 | |

[12] The hypothetical deductions included in this table closely approximate the average annual deduction taken in these general categories according to the most recent statistics available. See Internal Revenue Service, Individual Income Tax Returns: Statistics of Income 1968 at 65 (Table 2.4—Itemized Deductions by Type and by Adjusted Gross Income Classes.)

| | | | |
|---|---|---|---|
| *Special* | | | |
| Self Employment Plan | **1,000** | | |
| TOTAL DEDUCTIONS | 3,640 | 2,670 | 1,300 |
| Exemptions (2) | 1,300 | 1,300 | 1,300 |
| DEDUCTIONS FROM INCOME | 4,940 | 3,970 | 2,600 |
| PA. TAXABLE INCOME | 5,060 | 6,030 | 7,400 |
| 3.5% PA. INCOME TAX | 177.10 | 211.05 | 259.00 |
| ACTUAL EFFECTIVE RATE ON INCOME RECEIVED, EARNED, OR OTHERWISE ACQUIRED "FROM ANY SOURCE WHATSOEVER" | 1.77% | 2.11% | 2.59% |

## TABLE III

*Taxpayers "receiving, earning, or otherwise acquiring [$20,000] income from any source whatsoever."* (Sec. 305)

| | A<br>*Self<br>Employed* | B<br>*Wage<br>Earner* | C<br>*Wage<br>Earner* | D<br>*Wage<br>Earner* |
|---|---|---|---|---|
| Home: | $40,000 | $40,000 | Renter | Renter |
| Mortgage: | $20,000 | $20,000 | None | None |
| INCOME | $20,000 | $20,000 | $20,000 | $20,000 |
| DEDUCTIONS: | | | | |
| *Medical* | | | | |
| Insurance | 150 | 150 | 150 | |
| Other | 400 | 400 | 400 | |
| *Taxes* | | | | |
| Real Estate (30 mills) | 1,200 | 1,200 | | |
| 1% Local Income Tax | 200 | 200 | 200 | |
| 3.5% Pa. Income Tax | 410 | 480 | 570 | (Stand- |
| Pa. Sales Tax | 200 | 200 | 200 | ard |
| Gasoline Tax | 100 | 100 | 100 | deduc- |
| *Contributions* | | | | tion) |
| 3% Contributions | 600 | 600 | 600 | |

| | | | | |
|---|---|---|---|---|
| *Interest* | | | | |
|   Mortgage (7½%) | 1,500 | 1,500 | | |
|   Auto Loan | 270 | 270 | 270 | |
| *Special* | | | | |
|   Self Employment Plan | 2,000 | | | |
| TOTAL DEDUCTIONS | 7,030 | 5,100 | 2,490 | 1,500 |
| Exemptions (2) | 1,300 | 1,300 | 1,300 | 1,300 |
| DEDUCTIONS FROM INCOME | 8,330 | 6,400 | 3,790 | 2,800 |
| PA. TAXABLE INCOME | 11,670 | 13,600 | 16,210 | 17,200 |
| 3.5% PA. INCOME TAX | 408.45 | 476.00 | 567.35 | 602.00 |
| ACTUAL EFFECTIVE RATE ON INCOME RECEIVED, EARNED, OR OTHERWISE ACQUIRED "FROM ANY SOURCE WHATSOEVER" | 2.04% | 2.38% | 2.83% | 3.01% |

For present purposes, the most significant feature of the above tables is the fact that each taxpayer in Tables II and III, respectively, enjoy the same privilege, to wit: that of "receiving, earning or otherwise acquiring" the *same* dollar amount of annual income "from any source whatsoever." Yet no two taxpayers are required to pay the same dollar amount of taxes, nor are any two taxpayers required to pay the same *effective* percentage rate of taxation upon their respective total incomes. (The range of rates extends from a low of 1.77% to a high of 3.01%.) Thus, the effect of the Personal Income Tax in these illustrative situations is entirely nonuniform by imposing differing tax burdens upon persons enjoying identical privileges.

These inequalities result, of course, from the manifold tax preferences afforded taxpayers depending among other things upon whether a particular taxpayer is a wage earner or self-employed, renter or home owner, etc.[13] Thus, for example, in Table II, A enjoys a

---

[13] See notes 3 and 4, supra.

substantial tax preference over B merely because of his $1,000 deduction for a self-employment retirement plan, a deduction wholly unavailable to B who is a wage earner. B, in turn, enjoys an even greater tax preference over C merely because he, unlike C, owns his own home and can profitably itemize his deductions in the sum of $2,670. Because C is a renter who cannot avail himself of substantial deductions for real estate taxes and mortgage interest, his only recourse is to claim the much smaller standard deduction of $1,300. Similar inequalities are contained in Table III dealing with typical taxpayers earning twenty rather than ten thousand dollars per year, and countless other examples could be just as easily constructed.

Whether or not these or any or all of the myriad other tax preferences implicit in Article III of the Tax Reform Code of 1971 might be thought to serve some useful social policy, the fact remains that unequal burdens are being imposed upon similar privileges in violation of the Uniformity Clause. These pervasive and impermissible discriminations between similarly situated taxpayers render Article III invalid.

We cannot agree with the Commonwealth's contention that since the Pennsylvania Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §3420a et seq., has been held constitutional, see *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 Atl. 37 (1936), the Personal Income Tax imposed by the Tax Reform Code of 1971 is likewise permissible.

In passing upon the validity of the corporate net income tax, this Court emphasized that it was ". . . *not* considering an income tax, but an excise tax for the privilege of doing business in the Commonwealth. . . ." *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 271, 27 A. 2d 62, 63 (1942) (emphasis added), and any attempted analogy between the instant tax and the corporate net income tax is unpersuasive. Corpora-

tions are artificial legal entities created with the permission of the state for the purpose of maximizing profits for shareholders, and the corporate net income tax is imposed upon a tax base which ". . . is the net income attributable to this state." *Turco Paint,* supra at 426, 184 Atl. at 40.

Natural persons, on the other hand, cannot be likened to profit-maximizing entities. Individuals spend their resources for an infinite variety of reasons unrelated to the making of a "profit". Thus, unlike the corporate context, it would be exceedingly difficult, if not impossible, to create a personal income tax designed to take into account the "cost" of producing individual income. Certainly the instant tax does not even attempt to do so, and the corporate net income taxes are accordingly inapposite.

In light of our decision that Article III of the Tax Reform Code of 1971 creates widespread tax preferences and thus is in direct conflict with the mandate of the Uniformity Clause, we need not pass upon the other issues presented in this appeal, namely, the validity of the vanishing tax credit provision, the validity of the thirty percent local tax credit, or whether the tax is invalid because the Governor failed to submit a balanced operating budget prior to recommending additional sources of revenue.

For the foregoing reasons, the decree of the Commonwealth Court is reversed. Each party to pay own costs.

Mr. Chief Justice BELL joins in this opinion and files a concurring opinion.

————

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

The Legislature passed and the Governor signed, on March 4, 1971, the "Tax Reform Code of 1971," Article III of which is commonly referred to as the Pennsylvania Personal Income Tax. I have believed for a cou-

ple of years that an income tax was inevitable in Pennsylvania.* However, that, of course, means a Constitutional income tax—and in this case it particularly means an income tax which does not violate the *Uniformity* provisions in our State Constitution.

I join in Justice ROBERTS's able Opinion.** In an attempt to implement or explain or distinguish the many points of view and the rationale which have been expressed in the various Opinions, I feel compelled, because of the tremendous importance of this income tax to millions of Pennsylvanians, to supplement Justice ROBERTS's Opinion and to attempt to further explain, answer or refute some of the reasonings which have been advanced by others.

Nearly everybody hates taxes. However, taxes of nearly every kind and description and nomenclature are Constitutionally and legally permissible, provided they do not violate any provision of the Constitution or any pertinent statute. Of all the provisions of the Constitution, the interpretation and application of those provisions which pertain to taxes, and especially the *Uniformity Clause,* present the most difficulties. Some of this Court's decisions on the subject of taxes are confusing, and others irreconcilable. Moreover, similar difficulties arise in the interpretation and application of tax *statutes* and tax *ordinances.* An illustration of this difficulty may be found in the recent case of *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A. 2d 182, in which this Court held that a tax on the privilege of transacting business was an *excise* tax, and was not duplicative of the corporate net income tax, or of the State's capital stock tax, or of its foreign corporation

---

* The wisdom or fairness of an Act is a matter for the Legislature and not for the Courts.

** I wish to take this opportunity to tell the Commonwealth Court how much we appreciate their speedy consideration and disposition of these cases—they have been very helpful.

franchise tax, because those taxes were *property* taxes, whereas the challenged Philadelphia ordinance .tax was an excise or privilege tax. That decision was made by this Court in 1953 and lasted four years. Four years later (in 1957), in *Commonwealth v. National Biscuit Company,* 390 Pa. 642, 136 A. 2d 821, this Court repudiated that interpretation and held that the foreign corporation franchise tax was not a property tax, but was an excise tax, i.e., a privilege tax. This interpretation and conclusion was arrived at by determining (1) whether the challenged tax is a tax on the same subject matter and (2) whether the measure of the tax "is the base or yardstick by which the tax is applied." Irrespective of what said tax actually and legally was (and which of the aforesaid cases was correctly decided), these cases demonstrate that a provision of the Constitution, or of a statute, or of an ordinance pertaining to taxes is oftentimes very difficult of interpretation, as well as application.

Senator Tilghman contends that the Pennsylvania Personal Income Tax passed under Article III of the Pennsylvania Tax Reform Code of 1971 and approved by the Governor on March 4, 1971, is unconstitutional because it was passed by the Legislature *without the benefit of an annual operating budget submitted by the Governor.* Section 12 of *Article VIII of the Constitution of 1968* provides that the Governor shall submit to the General Assembly "annually at the times set by law . . . (a) a balanced operating budget for the ensuing fiscal year setting forth in detail (i) proposed expenditures classified by department or agency and by program and (ii) estimated revenues from all sources."

Moreover, Section 602 of the Administrative Code, Act of April 9, 1929, P. L. 177, as amended, 71 P.S. §222, provides that the Governor shall submit to the Legislature a balanced operating budget *"as soon as*

*possible** after the organization of the General Assembly." While it would be both wise and helpful if the Governor complied with these provisions, the time period is an indefinite generalization, and it should be construed not only reasonably but also realistically.

The Commonwealth Court unanimously (although strongly divided as to the other issues raised) held that Tilghman's contention is *meritless.* They concluded, and *we agree,* that there is nothing in the record to show that the aforesaid Act, when reasonably and realistically construed, was not complied with by the Governor. More importantly, there is nothing in the Constitution or in the Act, which specifically or by necessary implication prohibits a Legislature from enacting tax legislation before its receipt from the Governor of a balanced operating budget.

The present Personal Income Tax Act imposing a tax on the amount shown on Line 50 of the Federal Income Tax Return provides, because of at least a dozen items, exemptions, deductions, classifications, discriminations, and/or provisions, a different tax basis** for thousands of people—including, inter alia, the *exemption from all taxes* of many millionaires.

The contention of the appellants that the Act is unconstitutional because it delegates the tax and the power to tax to the Federal Government by adopting Line 50 of the Federal Income Tax Return as the basis for the Pennsylvania Personal Income Tax is without merit. The Pennsylvania Legislature has merely taken and *adopted,* as the base for the Income Tax levied by the Commonwealth, the taxable (net) income arrived at and reported on Line 50 of the Federal Income Tax Return. See *Campbell v. Coatesville Area School District,* 440 Pa. 496, 503, 270 A. 2d 385; *Commonwealth v.*

---

* Italics throughout ours, unless otherwise noted.
** The effect of this will be hereinafter discussed.

*Budd,* 379 Pa. 159, 108 A. 2d 563; *Commonwealth v. Warner Brothers,* 345 Pa. 270, 27 A. 2d 62; *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 Atl. 37.

Every Act of the Legislature, even a tax statute, is presumed to be Constitutional and its challengers must prove clearly, plainly and palpably that it violates the Constitution—in this case, the Uniformity Clause. *Wanamaker v. Philadelphia School District,* 411 Pa. 567, 274 A. 2d 524; *Campbell v. Coatesville Area School District,* 440 Pa., supra; *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 166, 87 A. 2d 480; *Evans v. West Norriton Township,* 370 Pa. 150, 87 A. 2d 474; *Tranter v. Allegheny County Authority,* 316 Pa. 65, 173 Atl. 289. I believe this test for violation has been met by those who allege the Act is unconstitutional.

I agree with Justice EAGEN that the Vanishing Tax Credit and the Local Tax Credit are for several reasons unconstitutional. For example, the former would be violative of the Uniformity Clause as interpreted in *Saulsbury v. Bethlehem Steel Company,* 413 Pa. 316, 196 A. 2d 664, and in *Kelly v. Kalodner,* 320 Pa. 180, 181 Atl. 598. Moreover, Section 319, dealing with the poor, aged, infirm or disabled (Article VIII, Section 2(b)(ii)) is (because of lack of definition of this class) too vague to comply with the exemption provisions in this Section.

I likewise believe, for the reasons set forth in Justice EAGEN's Opinion, that Section 317, which deals with taxes imposed by political subdivisions of this Commonwealth, is unconstitutional, because it patently lacks uniformity in its operation. In *Allentown School District Mercantile Tax Case,* 370 Pa., supra, the Court said (pages 167-168, 170): "Article IX, Section 1, of the Constitution of Pennsylvania, provides, 'All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general law;

. . .' This means that the classification by the legislative body must be reasonable and the tax must be applied wtih uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class: Commonwealth v. Girard Life Insurance Co., 305 Pa. 558, 158 A. 262; Knisely v. Cotterel, 196 Pa. 614, 46 A. 861; Dufour v. Maize, 358 Pa. 309, 56 A. 2d 675; Commonwealth v. McCarthy, 332 Pa. 465, 3 A. 2d 267; Dole v. Philadelphia, 337 Pa. 375, 11 A. 2d 163.

. . .

"Uniformity requires substantial equality of tax burden: Com. v. Overholt & Co., Inc., 331 Pa. 182, 200 A. 849; Com. v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319; Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29. While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained (Wilson v. Philadelphia, 330 Pa. 350, 352, 198 A. 893), the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited: Cf. Com. v. Overholt & Co., Inc., 331 Pa. 182, 190-191, 200 A. 849; Pollock v. Farmers' Loan and Trust Co., 157 U.S. 429, 599. *Moreover while reasonable and practical classifications are justifiable, where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated*: Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 184 A. 37; Hans Rees' Sons v. North Carolina, 283 U.S. 123."

I am familiar with *Section 1202* of the Act, "Constitutional Construction," which provides: ". . . It is hereby declared as the legislative intent that this code would have been adopted had such unconstitutional word, phrase, clause, sentence, section or provision thereof not

been included herein." In the light of Section 1202, the unconstitutionality of these two vanishing credit provisions would not impair the Constitutionality of the rest of the Act, if the Act as a whole was Constitutional. However, since the Act is clearly, plainly and palpably unconstitutional, Section 1202 is inapplicable.

One other contention of the appellees remains to be answered, namely, that the corporation tax decisions of this Court are apposite and controlling. I disagree. Corporate tax cases are different and distinguishable from taxes imposed on individuals, and (I repeat) are therefore not controlling. For example, Article VIII of the Pennsylvania Constitution of 1968, "Taxation and Finance", provides:

*"Uniformity of Taxation*

Section 1. *All taxes shall be uniform, upon the same class of subjects,* within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

*Exemptions and Special Provisions**

Section 2. (a) The General Assembly may by law exempt from taxation:

. . .

(b) The General Assembly may, by law:

. . .

(ii) *Establish as a class or classes of subjects of taxation the property or privileges of persons who, because of age, disability, infirmity or poverty* are determined to be in need of tax exemption or of special tax provisions, *and for any such class or classes, uniform standards and qualifications . . ."*

This *exemption* provision clearly indicates that there may Constitutionally be different tests, standards and exemptions for individuals which are totally inapplicable to corporations, and consequently decisions with

---

\* New, under the 1968 Constitution.

respect to and governing taxes for corporations are not controlling on uniformity requirements for individuals.

For the reasons set forth in Mr. Justice ROBERTS's Opinion, and also for the additional reasons herein set forth, I believe the Pennsylvania Personal Income Tax is clearly, plainly and palpably Unconstitutional.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

Mindful of the exigent need of the Commonwealth for additional tax revenues, it is with great reluctance that I feel compelled to join in the decision of the Court that Article III of the Tax Reform Code of 1971 is unconstitutional for want of uniformity. While I agree with much of what is said in the majority opinion, I do not agree with all of it. In view of the importance of the case, I deem it incumbent on me to delineate briefly my points of difference.

The approach used in the new personal income tax is, of course, to define taxable income by adopting the definition of taxable income contained in the Internal Revenue Code, with certain adjustments. The federal definition is complicated, but in simplest terms means gross income (as defined in the Code) less certain adjustments. From this "adjusted gross income" are subtracted allowable deductions (or a standard deduction if deductions are not itemized) and personal exemptions. The resultant figure is "taxable income". To this the federal code applies a graduated rate of tax and then permits certain tax credits. The state statute applies a flat 3.5% rate. The result of this incorporation by reference of the federal definition is, as the majority opinion and the opinion of President Judge BOWMAN, dissenting in the court below, make clear, to employ as a tax base a figure which is something less than all income received by a taxpayer, and which may vary considerably even among taxpayers having the

same gross income, depending on their particular situations.

Were we writing on a clean slate, I might agree that the built-in inequalities in the federal tax base serve to render the same tax base, when adopted by Pennsylvania, impermissibly non-uniform under our Constitution. But the slate is not clean. Unlike the majority, I think the decisions of this Court approving the Corporate Net Income Tax, Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §3402a, et seq. (C.N.I.), compel an approval of the taxable income definition in Article III of the Tax Reform Code of 1971 *insofar as the Internal Revenue Code provisions relating to corporate taxable income are substantially parallel to the provisions of the same Code relating to individual taxable income.* The C.N.I., from its beginning in 1935, has defined "net income" (which is there the measure of the tax) as meaning "net income . . . as returned to and ascertained by the Federal Government." 72 P.S. 3420b. This figure is in general gross receipts, less cost of goods sold and/or of operations, plus other income items, less allowable deductions.[1] The federal tax structure is thus basically the same whether the taxpayer be an individual or a corporation.

In *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 184 Atl. 37 (1936), one of the contentions of the taxpayer in a broad assault upon the constitutionality of the C.N.I. was that although the tax was at a flat 6% rate of net income (the present rate is 12%), it was in effect a graded tax because of the process by which net income was determined. This Court held explicitly to the contrary. The C.N.I. was again challenged in *Commonwealth v. Warner Bros.*, 345 Pa. 270, 27 A. 2d

---

[1] The interrelationship of the C.N.I. and the Internal Revenue Code provisions relating to corporation income are described, *inter alia*, in *Commonwealth v. General Refractories Co.*, 417 Pa. 153, 207 A. 2d 833 (1965).

62 (1942). The Court there held that the incorporation by reference of the net income definition applicable to corporations as used in the Internal Revenue Code did not involve a delegation of legislative power in violation of Article IX, Section 1 of the Constitution of 1874. The Pennsylvania Act, said the Court, "does not delegate the power to tax to the Federal tribunal, it only takes the net income fixed by it as the base for the excise privilege tax levied by the Commonwealth." (345 Pa. at 272). The Court also, following *Turco Paint & Varnish Co.,* supra, again rejected the charge that the C.N.I. violated the uniformity clause. See also *Commonwealth v. Budd,* 379 Pa. 159, 108 A. 2d 563 (1954).

The majority would distinguish these cases principally on the ground that corporations are "artificial legal entities" engaged in business for profit, whereas natural persons spend their resources for a number of reasons unrelated to profit-making, some of which give rise to income tax deductions not applicable to corporations.[2] This seems to me unimportant as far as the power of the state to adopt a federally determined tax base is concerned.[3]

---

[2] The significant deductions in this category appear to be those relating to medical expenses and alimony payments. Corporations as well as individuals may, within certain limitations, deduct charitable contributions.

[3] The distinction is also made by the majority that the corporation tax has been held to be an excise tax for the privilege of doing business (*Commonwealth v. Warner Bros., supra;* but see *Commonwealth v. Eastern Motor Express, Inc.,* 398 Pa. 279, 298, 157 A. 2d 79 (1959)) whereas the personal income tax is purportedly on the privilege of receiving, earning or acquiring income. I agree with Justice EAGEN in his dissenting opinion that whatever be the proper label to be applied to the two taxes, the result should be the same, for the constitutional mandate is that "*all* taxes shall be uniform . . ." (my italics). This Court has stated without equivocation that "all" means what it says. *Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 196 A. 2d 664 (1964) ; *Kelly v. Kalodner,* 320 Pa. 180, 181 Atl.

But although the *Turco Paint & Varnish* authority goes far to validate the present tax, as far as the legality of the federal base is concerned, it does not, in my view, go the whole way. The reason is that, in addition to certain deductions allowed to individuals which have no similarity to those allowed to corporations (notably deductions for medical expenses and alimony payments), there is no parallel in the federal income tax on corporations with the exemptions which are an integral part of the federal income tax on individuals. The federal income tax on individuals, as is well known, allows a personal exemption of $625[4] for each taxpayer and for each of his dependents as defined, allows an additional exemption if the taxpayer is 65 years of age or older, and an additional exemption if the taxpayer is blind. I agree with Judge BOWMAN that these exemptions, "while meritorious in terms of ability to pay, bear no rational relationship to a tax on net income." Moreover, as the majority opinion makes clear, exemptions very like those now in the federal income tax structure were held violative of the uniformity clause in *Kelly v. Kalodner,* 320 Pa. 180, 181 Atl. 598 (1935) and in *Saulsbury v. Bethlehem Steel Co., supra.* In *Saulsbury,* disapproving a tax ordinance imposing an occupational privilege tax which excluded from its operation those whose gross earnings would not amount to $600 per year, the Court said: ". . . the tax . . . lacks uniformity and is in violation of the constitutional provision. While different subjects may be reasonably classified for tax purposes . . . there must be no lack of uniformity within the class, either on the given subject of the tax or the persons affected as payers. . . . Part of the class may

---

598 (1935), and, indeed, the parties to this litigation do not contend otherwise.

[4] This figure will become $650 in 1971, and $750 by 1973. Section 151 of the Internal Revenue Code, as amended.

not be excused, regardless of the motive behind the action."

The constitutional infirmity in these exemptions is not cured merely because they are part of a federal definition incorporated by reference in the new tax law; the holding in *Turco,* as mentioned above, does not give them sanction, there being no near counterpart in the Internal Revenue Code provisions applicable to corporation income. Neither are the exemptions saved by the new Section 2(b)(ii) of Article VIII of the Pennsylvania Constitution, which provides for the establishing of classes of taxpayers who are in need of tax exemption or special tax provision because of age, disability, infirmity or poverty. This is so both because the Legislature did not undertake to establish such classes with respect to the federal exemptions and because those exemptions apply regardless of the amount of the taxpayer's income.[5]

Because the basic impermissible aspect of the personal income tax, as I view it, is not the result of express language used in the Code but comes about by the adoption of the federal tax base, there is, regrettably, no way to take advantage of the severability clause (§1202) of the Tax Reform Code of 1971; there is no single word, phrase, clause, sentence, section or provision which can be pointed to as the offensive language, let alone stricken. Hence, I must agree with the Court that the entire Article III must be declared in-

---

[5] The General Assembly did undertake to utilize the new classification authority granted to it by the 1968 constitutional amendment in §319 of Article III, establishing so-called vanishing tax credits wtih respect to persons whose incomes are $10,000 and under. I agree with Justice EAGEN and Judges MENCER and KRAMER below in their respective dissenting opinions that §319 as drafted fails to establish the classes sought to be provided for. (I also agree with Justice EAGEN that the local tax credit as contained in §317 of Article III is patently lacking in uniformity.)

valid. See *Pa. R. R. Co. v. Schwartz,* 391 Pa. 619, 139 A. 2d 525 (1958) ; cf. *Butcher v. Philadelphia,* 333 Pa. 497, 6 A. 2d 298 (1938).

DISSENTING OPINION BY MR. JUSTICE EAGEN:

Neither from my understanding of the Uniformity Clause, nor from past decisions by our Court in this area of law nor indeed from the reasoning of the majority am I inexorably led to conclude that the general features of the Personal Income Tax (Article III, Tax Reform Code of 1971, adopted March 4, 1971, Act No. 2, 72 P.S. 7107 et seq.) violate Article VIII, Section 1 of the Pennsylvania Constitution and for this reason I am compelled to dissent.

In 1935 this Court answered with a resounding NO the question of whether Pennsylvania could enact a *graduated* personal income tax which would comport with the Uniformity Clause of the Taxation and Finance Article of the Constitution. *Kelley v. Kalodner,* 320 Pa. 180, 181 A. 598 (1935). But just as importantly we did not say that the Legislature could never enact any form of income tax. The injunction was simply that the constitutional mandate of uniformity must be observed.

My review of the decisions of this Court encourages me in the conclusion that the Legislature in framing Article III of the Tax Reform Code has remained faithful to the constitutional guidelines and nice distinctions of the concept of uniformity as set down by this Court.

At the outset it might be helpful for purposes of clarity and comparison to review briefly the majority's position. It is their contention that although the Tax Reform Code of 1971 purports to impose a flat 3½ percent tax on "taxable income", the concept of "taxable income" already reflects the federal personal exemptions for the taxpayer and his qualified dependents and hence embodies exactly the same elements of non-

uniformity as were condemned in *Kelley v. Kalodner,* supra, and *Saulsbury v. Bethlehem Steel Company,* 413 Pa. 316, 196 A. 2d 664 (1964). "The effect of the Personal Income Tax . . . is entirely nonuniform by imposing differing tax burdens upon persons enjoying identical privileges." [Opinion of the Majority, page 17]

The rejoinder to this position is that the Legislature in resorting to the federal system for its tax base in the present instance acted in no wise differently than it did in imposing the Corporate Net Income Tax Act of 1935, 72 P.S. 3420(a) et seq., a taxing statute which was upheld by this Court in *Turco Paint & Varnish Company v. Kalodner,* 320 Pa. 421, 184 A. 37 (1936) and again in *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62 (1942).

The contention in the *Turco Paint & Varnish Company* case was that the corporate net income tax could not be uniform *because of the process by which net income was determined.*[1]

Despite the fact that permitted deductions from gross income might vary drastically with respect to corporations having the same gross income, and therefore result in widely varying taxable net income, our Court *did not* find this use of net income returned to and ascertained by the Federal Government as a Pennsylvania tax base to be violative of the Uniformity Clause. As Mr. Chief Justice KEPHART wrote: "Plaintiff

---

[1] The base of this corporate tax is net income as returned to and ascertained by the Federal Government. Some of the adjustments which are involved under the Federal Tax Code in converting corporate gross income to corporate net income are: deductions for business expenses, 26 U.S.C.A. (I.R.C. 1954) §162 which can include, inter alia, penal damages paid to individuals for anti-trust violations (§162(g)); charitable contributions, 26 U.S.C.A. §170; net operating loss carryovers, 26 U.S.C.A. §381; payments made to pension and profit-sharing plans, 26 U.S.C.A. §404, etc. If "widespread tax preferences" are not also built into this tax then I do not know what that phrase means.

has not pointed to a single provision of the act which would demonstrate a legislative intent to impose a graded income tax. The rate used, 6%, is the same for all corporations. The tax base to which this rate is to be applied is also identical. It is the net income attributable to this state. It certainly should be axiomatic that the same impost when applied to the same subject-matter does not make the tax graded simply because of the fact that one association, owning more of the particular taxable subject matter than another, pays, on this account, a greater sum total of tax." 320 Pa. at 426.

A compelling question now arises: If a federally determined base (and one freighted with exemptions and deductions) is held to meet the constitutional test of uniformity in the instance of the corporate net income tax, why does not the same hold true for the personal income tax; how does it come to pass that the base of the latter tax is so fatally defective?

The majority's answer is that it is inapposite to refer to this Court's approval of the corporate net income tax since what was being considered there was an excise tax on the privilege of doing business in the Commonwealth, not an income tax; the implication being that while the former is an excise levy, the latter is a property tax and never the twain shall meet.

Such a contention cannot square with what Mr. Justice, now Chief Justice BELL, so pellucidly wrote in *Commonwealth v. Eastern Motor Express, Inc.,* 398 Pa. 279, 298, 157 A. 2d 79 (1959); "The constitutionality of the Corporate Net Income Tax Act of May 16, 1935, as reenacted and amended, was sustained on the ground that it was a *property* tax on net income, in spite of the declaration in the Act that it was an excise tax: Blauner's Inc. v. Philadelphia, 330 Pa. 342, 345, 198 A. 889; National Biscuit Co. v. Philadelphia, 374 Pa. 604, 612, 98 A. 2d 182; Murray v. Philadelphia, 364

Pa. 157, 169, 71 A. 2d 280; Philadelphia v. Samuels, 338 Pa. 321, 326, 12 A. 2d 79. . . ." [Emphasis not ours] [footnote omitted][2]

But even granting for the sake of argument that the corporate net income tax is an excise tax, the import of the majority's distinction (and its conclusion of inappositeness) continues to elude me.

In *Saulsbury v. Bethelem Steel Co.,* 413 Pa. 316, 319, 196 A. 2d 664 (1964), we restated what has so often been repeated, that: "The Pennsylvania Constitution specifically states that 'All taxes shall be uniform, upon the same class of subjects.' This language is as broad and comprehensive as it could possibly be and must necessarily be construed to include all kinds of taxes, be they in the nature of property or excise levies. The Pennsylvania constitutional provision is all inclusive and is clearly not limited to requiring uniformity in property taxes alone." [citations omitted]

Hence it is fair to again ask that if it is constitutionally permissible for the measure of the corporate net income tax to be the income upon which tax is paid to the Federal Government, why cannot the same be true for a personal income tax? An apple is not an orange and an excise tax is not a property tax, but when the Uniformity Clause applies to both, as we have seen that it does, how can the latter tax be determined to be defective for using the federally determined base in conjunction with a flat 3.5 percent rate? The genetics of these two types of taxation are of little moment when analyzed for purposes of uniformity.

My conclusion is and must be that such denial of an analogy between the instant tax and the corporate net income tax does not withstand analysis unless we

---

[2] In a footnote to this statement, Mr. Justice BELL acknowledged the existence of other "confusing", "irreconcilable" decisions on this point but his own opinion concludes that such cases are wrong. No member of the Court dissented to this opinion.

are willing to turn the clock back thirty-five years and retroactively brand the *Turco Paint & Varnish Company* case and its progency as aberrations.

To reiterate, this Court has sanctioned the borrowing of a tax base from the Federal Government and has given short shift to arguments that it was not uniform. As was said in *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 272, 27 A. 2d 62 (1942); "Net income as ascertained is the base upon which the tax is measured, not the tax itself. How it was fixed by the Federal Authorities is of no concern to the taxing officers of the Commonwealth nor to its statute. The rate of income tax may vary, or the method of its computation but as a base it is unvarying."[8]

Mindful that this Court has written that "Absolute equality is of course unattainable; a mere approximative equality is all that can reasonably be expected", *Commonwealth v. Delaware Div. Canal Company,* 123 Pa. 594, 620, 16 A. 584 (1889), and also that there is a presumption of constitutionality attending legislative enactments, see *Hadley's Case,* 336 Pa. 100, 6 A. 2d 874 (1939), I would hold that Article III of the Tax Code, with the exceptions of Section 317 and 319, meets the constitutional standards of uniformity.

THE VANISHING TAX CREDIT:

It cannot be gainsaid that the Legislature now has the authority under the new provisions of the Pennsylvania Constitution to establish special classes or make

---

[8] The *Warner Bros.* case also answers those who would contend that the personal income tax violates the restriction on exemptions clause of the Pennsylvania Constitution (Article VIII, §5) and that the base constitutes a delegation of legislative authority to the Federal Government. As the Court in this case observed: "[T]he Act does not delegate the power to tax to the Federal tribunal, it only takes the net income fixed by it as the base for the excise privilege tax levied by the Commonwealth." 345 Pa. at 272. See also, *Commonwealth v. Curtis Publishing Co.,* 363 Pa. 299, 69 A. 2d 410 (1949).

special tax provision for the poor, aged, infirm or disabled (Article VIII, Section 2(b)(ii)). Accordingly, the Legislature sought to accomplish this commendable result in Section 319 of the Tax Code.[4]

For the reasons outlined by Judge KRAMER in his opinion in the court below, I feel that Section 319 cannot escape condemnation since its very vagueness would allow it to operate in a nonuniform manner far removed in some instances from its original purpose. As Judge KRAMER aptly notes the section is absolutely devoid of any definition of age, disability, infirmity or poverty. Can it be said that these terms are infused with any more meaning by reciting that "The class of taxpayers who qualify for such tax credit and the amount thereof shall be determined solely by reference to the taxable income and exemption schedule. . . ."

Something more than "taxable income" is needed to make the permitted classification of poor, aged, disabled and infirm an integrated classification and hence, uniform. However this is merely a technical defect easily corrected by the use of qualifying definitions.

THE LOCAL TAX CREDIT:

In an attempt to alleviate some of the double taxation resulting from the imposition of the personal income tax, the Legislature included in the Tax Code the following credit provision:

---

[4] Section 319(b) provides: "Establishing of Class: Tax Credit—Pursuant to the provisions of said section of the Constitution of Pennsylvania there is hereby legislatively determined and established in the schedule provided in subsection (c) of this section, a class of taxpayers who by reason of poverty, age, disability or infirmity are in need of special tax relief and the members of such class, on and after the effective date of this article shall be entitled to claim a credit against the amount of tax which would otherwise be due under this article. The class of taxpayers and the members thereof who qualify for such tax credit and the amount thereof shall be determined solely by reference to the taxable income and exemption schedule set forth in subsection (c) of this section."

"Section 317. Taxes imposed by political subdivisions of this Commonwealth:

"(a) Every resident or nonresident individual, estate or trust subject to tax under this article shall be allowed a credit against the tax otherwise due under this article equal to thirty percent of the amount of any local taxes imposed on and paid by such individual, estate or trust to any political subdivision of this Commonwealth during the calendar year 1971, except that such credit shall not apply to local taxes imposed on real estate, realty transfers or amusements.

"(b) For local taxes described in subsection (a) imposed and paid in the taxable years beginning after December 31, 1971, the amount of credit base provided in this section shall not exceed thirty percent of the total amount of the local taxes which were imposed and paid by such individual, estate or trust during the calendar year 1971 to political subdivisions of this Commonwealth, except that in the case where no such local taxes were imposed upon and paid by such individual, estate and trust during the calendar year 1971, then the percentage rate shall be applied to the total amount of such local taxes which were imposed upon and paid by such individual, estate or trust during the calendar year in which such taxes were first imposed and paid and the amount so determined shall each year thereafter constitute the base on which the tax credit rate shall be applied."

This section, I believe, patently lacks uniformity in its operation and hence is unconstitutional.

The foremost thing to be noted is that the tax credit is frozen at thirty percent of taxes paid to a political subdivision of the Commonwealth during 1971, or if no such taxes were paid by the individual during 1971, then thirty percent of local taxes during the first year in which they were imposed and paid. The credit once established, is forever predetermined despite the fact

that a taxpayer may move to a new taxing authority and/or substantially increase the amount of his income. However, where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated. *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 A. 37 (1936). See also *Danyluk v. Johnstown,* 406 Pa. 427, 430, 178 A. 2d 609 (1962) wherein Mr. Justice COHEN said, "Residence cannot be made the basis of discrimination in taxation. . . . To permit such distinction would be contrary to the well established principle that the test of the validity of a classification is whether it produces diversity in results or lack of uniformity in its operation on . . . the persons affected as payers. Biddle Appeal, 390 Pa. 460, 468, 135 A. 2d 915 (1957)."

Despite the fact that the Commonwealth has impaled itself on its own good intentions here, this section of the Tax Code can be invalidated (as can section 319) without affecting the constitutionality of the rest of the Code. See *Butcher v. Philadelphia,* 333 Pa. 497, 6 A. 2d 298 (1938) where the Court excised credits provided by the Philadelphia income tax while upholding the tax itself.

Mr. Justice JONES joins in this dissent.